## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RORY M. WALSH, individually and as Natural Guardian of C.R.W., | : : : | CIVIL ACTION NO. 1:07-CV-0616 |
| | : | (Judge Conner) |
| **Plaintiff** | : | |
| v. | : | |
| | : | |
| DR. ROBERT KRANTZ, SHARI A. YOUNG, SUE A. CATHCART, JUDY KEENEY, KELLY HEISEY, UNKNOWN DALLASTOWN STAFF MEMBER, DR. STEWART WEINBERG, DALLASTOWN AREA SCHOOL DISTRICT, STEVEN L. TURNER, and PENNSYLVANIA DEPARTMENT OF EDUCATION, | : : : : : : : : : : : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are the motions, filed by defendants Dr. Robert Krantz ("Krantz"), Shari A. Young ("Young"), Sue A. Cathcart ("Cathcart"), Judy Keeney ("Keeney"), Kelly Heisey ("Heisey"), Dr. Stewart Weinberg ("Weinberg"), Dallastown Area School District ("School District"),[1] and Steven L. Turner ("Turner"), to dismiss the claims of *pro se* plaintiff Rory M. Walsh ("Walsh") brought individually and on behalf of his son, C.R.W.[2]  For the reasons that follow, the motions will be granted in part and denied in part.

---

[1] Krantz, Young, Cathcart, Keeney, Heisey, Weinberg, and the School District will be collectively referred to as "the School District defendants."

[2] See infra Part III.A.

## I.   __Statement of Facts__[3]

In 2004, Mrs. Zarfoss, an English teacher at Dallastown Area Middle School, arrived at Walsh's residence on a Sunday without prior notification and purportedly began to curse at and call Walsh names.  Walsh reported this incident to Krantz, the then-principal of the school.  According to the complaint, Krantz subsequently directed Heisey to contact social services to have Walsh's son, C.R.W., removed from his custody.[4]  (Doc. 1 ¶¶ 9, 14-15, 56.)

When mid-term grades were announced in the fall of 2005, C.R.W. received a blank and an "E" grade from Young.  Walsh was surprised by these grades because Young had not sent a note home, as school policy dictates, informing him that C.R.W. had missed three or more assignments.  (Id. ¶ 26.)  Young allegedly refused to attend a conference with Walsh to discuss C.R.W.'s progress and grades.[5]  Young also recommended that C.R.W. receive a psychological evaluation, but Walsh

---

[3] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint.  See infra Part II.  Because the plaintiff is proceeding in this matter *pro se*, the court has liberally construed the pleading's averments.  See Leamer v. Fauver, 288 F.3d 532, 547-48 (3d Cir. 2002). The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the allegations.

[4] This alleged attempt to have Walsh's son removed from his care was halted after Walsh confronted Krantz about the situation.  (Doc. 1 ¶ 56.)

[5] During the 2005-2006 school year, Young and Krantz repeatedly refused any parent-teacher conferences that Walsh requested to discuss Young's abusive actions.  (Doc. 1 ¶ 26.)

refused.[6]  (Id.)  Cathcart then immediately restricted Walsh from the Dallastown

Area Middle School.[7]  (Id.)  In May 2006, Young failed to give C.R.W. mid-term

grades.  (Id. ¶ 28.)  Walsh reported this failure to Krantz, who allegedly responded

by insulting Walsh.  (Id. ¶ 29.)

   In December 2005, Krantz pressured Walsh to have C.R.W. undergo a

psychological evaluation.  Walsh again refused to allow such testing.  (Id. ¶ 18.)

Cathcart then informed each of C.R.W.'s teachers that Walsh refused to allow his

son to be tested.  (Id. ¶ 31.)  During this time, Walsh reported to Krantz that Young

was abusing her students, bringing one student to tears in class and repeatedly

changing due dates of assignments.  (Id. ¶ 19.)  Krantz became enraged and ordered

Walsh to his office because "Krantz's limited authority under the Safe Schools Act

only covers his campus, and [Krantz] has become accustomed to belittling parents

within his office."  (Id. ¶ 20.)  Walsh reported this incident with Krantz to Weinberg,

the Superintendent of the School District, who advised Walsh to report to Krantz's

---

[6] Walsh alleges that Cathcart "falsely stated [that] she personally witnessed
minor C.R.W. leaving the restroom after having been crying, in an additional
attempt to convince [Walsh to allow] this psychological testing for C.R.W."  (Doc. 1
¶ 48.)

[7] From October through December 2005, Krantz, assisted by Keeney on one
occasion, purportedly threatened to restrict Walsh's access to the school if he
refused to consent to a psychological evaluation of C.R.W.  (Doc. 1 ¶ 57.)  In his
dealings with Walsh, Krantz often had a "restriction form" at the ready to deny
Walsh access to the school.  (Id. ¶ 47.)  Krantz supposedly used this form to attempt
to force Walsh to allow his son to be tested.  (Id. ¶ 48.)

office and recommended that Walsh allow the school to evaluate C.R.W.[8]  (Id. ¶ 21.)

Walsh believes that Krantz similarly treated other families within the school district

who had complained about Krantz's actions to drive them from the district, just as

he was attempting to drive Walsh and his children from the school district.  (Id.

¶¶ 10, 23-24.)

On March 29, 2006, Krantz blocked the first of two telephone calls from

Walsh to C.R.W.[9]  With the assistance of an unknown Dallastown staff member,

Krantz allegedly eavesdropped on a subsequent telephone conversation between

Walsh and C.R.W. (Id. ¶¶ 9, 34, 37, 40, 43.)  An email from Krantz to Walsh revealed

the contents of the conversation between Walsh and his son, and in the email

Krantz "expressed his fury that a parent would call his school, twice in the same

day."[10]  (Id. ¶ 44.)

Walsh initiated an inquiry into the alleged wrongdoing of these Dallastown

Area School District staff members.  According to the complaint, Turner, the

assigned investigator, failed to conduct an impartial inquiry, repeatedly tried to

precipitate an incident at Walsh's residence during the investigation, and falsely

---

[8] Walsh alleges that Weinberg endorsed Krantz's attempts to order Walsh to his office and to force Walsh to allow C.R.W. to be tested.  (Doc. 1 ¶¶ 51-52.)

[9] According to the complaint, this was not the first time Krantz blocked Walsh's access to his son at school.  (Doc. 1 ¶ 44.)

[10] The court notes that Walsh did not attach the email to the complaint.  He attached many emails to his brief in opposition, but the court cannot consider these attachments at the motion to dismiss stage.  See infra Part II.

reported C.R.W.'s statements regarding Young's conduct.  (Id. ¶¶ 11, 49.)  Walsh

avers that Young no longer works at the Dallastown Area Middle School and that

Krantz was transferred to the Dover School District because of their alleged

wrongdoing.  (Id. ¶¶ 12, 22.)

Walsh commenced the instant action on April 2, 2007.  (See id.)  He alleges,

*inter alia*, that Krantz, Cathcart, Keeney, Young, and Heisey attempted to deprive

him and his children of a public education (id. ¶¶ 16, 55).  The complaint sets forth

nine counts against the individual defendants and the School District:  (1) 18 U.S.C.

§ 241 (conspiracy against rights), (2) 42 U.S.C. § 1985 (conspiracy to interfere with

civil rights), (3) 5 U.S.C. § 552 (Privacy Act), (4) 18 U.S.C. § 119 (interception of oral

communications), (5) 18 U.S.C. §§ 2510-2520 (Federal Wiretapping Act), (6) 47 U.S.C.

§ 605 (unauthorized publication or use of communications), (7) 18 Pa. Cons. Stat.

Ann. §§ 5703, 5704, 5725 (Pennsylvania Wiretap Act), (8) 42 U.S.C. § 1983 (civil

action for deprivation of rights), and (9) 18 U.S.C. § 875 (interstate communications).

Turner filed a motion to dismiss the § 1983 claim against him[11] and the School

---

[11] The only claim brought against defendant Turner is the § 1983 claim.

District defendants filed a motion to dismiss all claims against them.[12]  The motions

have been fully briefed[13] and are ripe for disposition.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept as true all factual allegations in the complaint and all reasonable

inferences that can be drawn therefrom, and view them in the light most favorable

to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting

Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally

limited in its review to the facts in the complaint, it "may also consider matters of

public record, orders, exhibits attached to the complaint and items appearing in the

---

[12] The order of court dated August 2, 2007 (Doc. 43) granted defendant
Pennsylvania Department of Education's motion to dismiss (Doc. 34) and denied
Walsh leave to amend with respect to this defendant.

[13] The court notes that Walsh submitted a word count certification (Doc. 33-3)
regarding his brief in opposition to the School District defendants' motion
indicating that he had complied with federal and local rules.  See L.R. 7.8(b)(2)
(permitting a brief to exceed fifteen pages if it does not exceed 5,000 words).
However, his word count of 4,997 words does not include footnotes (see Doc. 33-3),
and his brief contains substantial arguments and case citations within the footnotes
(see, e.g., Doc. 33 at 6 n.2, 9 n.4, 10 nn.5-6, 12 n.7, 13 n.8, 15 n.17, 16 nn.18-19, 17 n.20,
19 nn.22-23, 20 n.24, 21 n.26).  In future filings with the court, Walsh shall refrain
from excluding any text in his word count and shall otherwise comply with federal
and local rules.  See, e.g., L.R. 7.8(b)(3) ("No brief exceeding the limits described in
this rule may be filed without prior authorization.  Any motion seeking such
authorization shall specify the length of the brief requested and shall be filed at
least two (2) working days before the brief is due.").

record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380,

1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." Sershen v.

Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting

Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must

present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P.

8(a) (stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ---

U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to

"raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499

F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure

to state a claim if it "contain[s] either direct or inferential allegations respecting all

the material elements necessary to sustain recovery under some viable legal

theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567,

at *2 (3d Cir. 2007) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1969).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).

### III.   **Discussion**

The complaint raises:  (1) claims under various criminal statutes, (2) a 42 U.S.C. § 1985 claim, (3) a Privacy Act claim, (4) claims relating to the alleged eavesdropping, and (5) claims brought pursuant to 42 U.S.C. § 1983.  The court will address these claims *seriatim*.  Before doing so, however, the court will address defendants' contention that Walsh cannot bring claims belonging to his son.

### A.   **C.R.W.'s Claims**

The School District defendants contend that Walsh lacks standing to bring claims belonging to his son.  (Doc. 18 at 5.)  They argue that Walsh did not properly bring the claims *on behalf of* his son.  (Id. at 7.)  The court disagrees.  Although Walsh cannot bring *individual* claims for the alleged injuries sustained by C.R.W.,[14] a liberal reading of the complaint, see supra note 3, reveals that Walsh intended to bring individual claims for his own alleged injuries and claims on behalf of his son when he used the caption "Rory M. Walsh, individually and as natural guardian of C.R.W., a minor."  Indeed, in all but three counts—Counts II, VIII, and IX—the complaint reads:  "Plaintiffs pray for entry of a Judgment in their favor against defendants."  (Doc. 1 at 8, 10-12.)  Under Rule 17 of the Federal Rules of Civil Procedure, it is proper for Walsh, as natural guardian of C.R.W., to bring claims on behalf of C.R.W.  See Fed. R. Civ. P. 17.  Therefore, to the extent that Walsh brings

---

[14] See Livingston ex rel. Livingston v. Borough of McKees Rocks, 223 F. App'x 84, 88 (3d Cir. 2007) (stating that the plaintiffs lacked "standing to bring claims resting on the legal rights of third parties" (citing Powers v. Ohio, 499 U.S. 400, 410 (1991))).

*individual* claims for the alleged injuries to his son, the court will grant the School District defendants' motion to dismiss.  However, to the extent that Walsh brings claims *on behalf of* his son, the court will deny the motion.[15]

**B.   Criminal Statutes**

Defendants contend that Walsh cannot maintain the claims premised on the following criminal statutes:  (1) 18 U.S.C. § 241, (2) 18 U.S.C. § 875, and (3) 18 U.S.C. § 119.  The court agrees.  "A private party has no right to enforce federal criminal statutes."  <u>Balawajder v. Jacobs</u>, 220 F.3d 586, 586 (5th Cir. 2000).[16]  Nor do the criminal statutes at issue provide for a private right of enforcement.  <u>See</u> <u>Three</u>

---

[15] For the remainder of this opinion, when the court discusses Walsh's claims, it includes his individual claims and those brought on behalf of C.R.W.  If Walsh files an amended complaint, the complaint shall specify which claims are brought individually and which ones are brought on behalf of C.R.W.  Any amended complaint shall also specify which defendants are implicated by each claim.

[16] <u>See also</u> <u>Cok v. Cosentino</u>, 876 F.2d 1, 1 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."); <u>Mamer v. Collie Club of Am., Inc.</u>, 229 F.3d 1164, 1164 (10th Cir. 2000) ("[P]rivate citizens cannot prosecute criminal actions.") <u>Higgins v. Neal</u>, 52 F.3d 337, 337 (10th Cir. 1995) ("[C]ourts universally endorse the principle that private citizens cannot prosecute criminal actions."); <u>Am. Postal Workers Union v. Ind. Postal Sys. of Am., Inc.</u>, 481 F.2d 90, 93 (6th Cir. 1973) ("[There exists a] firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."); <u>Conn. Action Now, Inc. v. Roberts Plating Co.</u>, 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo-American jurisdictions by private complaints."); <u>United States ex rel. Savage v. Arnold</u>, 403 F. Supp. 172, 176 n.2 (E.D. Pa. 1975) ("[A] firmly established principle [is] that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." (citation omitted)).

<u>Rivers Ctr. for Ind. Living v. Hous. Auth.</u>, 382 F.3d 412, 420 (3d Cir. 2004) ("A court must look to the text of the statute to see if it states, by its terms, that a private party may bring suit to enforce it."); <u>Barr v. Camelot Forest Conservation Ass'n</u>, 153 F. App'x 860, 862 (3d Cir. 2005) (affirming the dismissal of the federal criminal statute claims because 18 U.S.C. §§ 241, 242, and 245 "are criminal offenses for which there is no civil remedy, and therefore, [plaintiff] lacked standing to bring them"); <u>United States v. City of Philadelphia</u>, 482 F. Supp. 1248, 1260 (E.D. Pa. 1979) ("On their face, [18 U.S.C. §§ 241 and 242] neither authorize any civil suit nor create any civil liability.").[17]  Notably, Walsh's opposition to the dismissal of these claims does not attempt to demonstrate that he has a private right of action under these criminal statutes.[18]  (<u>See</u> Doc. 33 at 6, 20-21.)  Accordingly, the motion to dismiss these criminal claims—Counts I, IV, and IX of the complaint—will be granted and leave to amend will be denied as futile.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

---

[17] <u>See also</u> <u>Am. Tel. & Tel. Co. v. M/V Cape Fear</u>, 967 F.2d 864, 869 (3d Cir. 1992) ("Congress punishes breaches of duties embedded in criminal statutes, but punishment does not require implication of a private enforcement remedy in every instance."); <u>Am. Postal Workers Union v. Ind. Postal Sys. of Am., Inc.</u>, 481 F.2d 90, 93 (6th Cir. 1973) ("[T]he general rule is that a private right of action is not maintainable under a criminal statute.").

[18] Walsh's opposition does not include any argument that the 18 U.S.C. § 119 claim should survive.  (<u>See</u> Doc. 33.)  As defendants point out, § 119 was re-codified as § 496.  Even assuming Walsh had a private right of action, the allegations of the complaint do not support a claim under § 496 because it involves forgeries and counterfeits in customs matters.  <u>See</u> 18 U.S.C. § 496.  Likewise, the allegations do not support a claim under the current § 119 because it involves the protection of individuals performing certain official duties.  <u>See</u> <u>id.</u> § 119.

### C.   **Section 1985 Claim**

Walsh alleges a § 1985 claim against various School District defendants.  (See Doc. 1 at 8-9.)  Section 1985(3) provides a cause of action against a person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).[19]  To establish a *prima facie* case under § 1985(3), a plaintiff must allege:  "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  Ridgewood Bridgeport. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253-54 (3d Cir. 1999); see also Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971); Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir. 2001); Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

In the matter *sub judice*, the complaint is devoid of allegations sufficient to state a § 1985 claim.  First, the complaint does not allege a conspiracy or agreement among the defendants; it merely sets forth the individual actions of these defendants.  Second, the complaint does not allege that "any 'racial or class based

---

[19] The complaint does not specify subsection (3) of § 1985.  However, the allegations of the complaint clearly do not implicate subsection (1), which involves preventing officers from performing duties, or subsection (2), which involves obstructing justice or intimidating a party, witness, or juror.  See 42 U.S.C. § 1985.

discriminatory animus'" motivated defendants' conduct.  See Cranbury Brook
Farms v. Twp. of Cranbury, 226 F. App'x 92, 95 (3d Cir. 2007) (citing Lake v. Arnold,
112 F.3d 682, 685 (3d Cir. 1997)).  Finally, the complaint does not identify a protected
class to which Walsh belongs.  In his opposition brief, however, Walsh argues that
he is a member of the protected class of single-parent families.  (See Doc. 33 at 20.)
The court finds that single-parent families do not constitute a protected class for
purposes of § 1985.

In determining whether a class is protected under § 1985, "a court must
examine whether a plaintiff belongs to a class that exhibits immutable
characteristics for which it bears no responsibility and whether the class has
suffered historically pervasive discrimination."  Laufgas v. Bramson, No. 04-387,
2006 WL 1805884, at *6 (D.N.J. June 29, 2006) ("[T]he Third Circuit, in holding that
persons with handicaps were members of a protected class for purposes of 42 U.S.C.
§ 1985(3), noted that a court must examine whether a plaintiff belongs to a class that
exhibits immutable characteristics for which it bears no responsibility and whether
the class has suffered historically pervasive discrimination." (citing Lake v. Arnold,
112 F.3d 682, 688 (3d Cir. 1997))); Humphrey v. Court of Common Pleas of York
County, Pa., 640 F. Supp. 1239, 1243 (M.D. Pa. 1986) (same).  The court finds that
Walsh's purported class—single-parent families—fails to satisfy either of these
criteria.  Id. (finding that the plaintiff's purported class—divorcing fathers, divorced
fathers, or fathers engaged in custody disputes—does not satisfy either criteria); see
also Borlawsky v. Town of Windham, 115 F. Supp. 2d 27, 29 (D. Me. 2000) ("The

12

class for which the plaintiff claims protection is 'divorced or otherwise single women parents.' That is not a recognized class [under § 1985(3)].").  Therefore, the purported class is not a protected class for purposes of § 1985.  Accordingly, the court will grant the School District defendants' motion to dismiss the § 1985 claim—Count II of the complaint—and will deny leave to amend as futile.  See Grayson, 293 F.3d at 108.

### D.   **Privacy Act**

Walsh brings a Privacy Act claim against Cathcart and the School District, alleging that Cathcart informed each of C.R.W.'s teachers that Walsh refused to allow his son to be tested.  (See Doc. 1 at 9-10.)  The Privacy Act provides that "[n]o *agency* shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."  5 U.S.C. § 552a(b) (emphasis added).  The court agrees with its sister courts in the Western District of Pennsylvania and the District of New Jersey that a Privacy Act claim cannot be brought against an individual or a state or local agency.  See Fetzer v. Cambria County Human Servs., 384 F. Supp. 2d 813, 816

(W.D. Pa. 2005);[20] <u>Cummings v. Malone</u>, No. 06-5442, 2006 WL 3694592, at *3 (D.N.J. Dec. 12, 2006) ("The Privacy Act prohibits certain records from being disclosed by federal agencies, except upon written consent of the individual to whom the record pertains, with exceptions.  However, Plaintiff may not seek damages under the Privacy Act because that statute authorizes a civil action to be brought solely against a federal agency." (citations omitted)).  In the matter *sub judice*, the complaint does not name a federal agency as a defendant.  Therefore, the Privacy Act claim must fail.  Accordingly, the court will grant the School District

---

[20] In finding as a matter of law that the Privacy Act does not apply to individuals or state or local agencies, the <u>Fetzer</u> court stated:

> The civil remedies portion of the Privacy Act explicitly states that it applies to agencies, thus eliminating the possibility of a cause of action under the Privacy Act against any natural person sued under the act . . . . In addition, the Act defines "agency" by referring to the Freedom of Information Act, at 5 U.S.C. § 552(e), which has been moved to 5 U.S.C. 552(f).  The Freedom of Information Act, at 5 U.S.C. § 552(f), refers to 5 U.S.C. § 551(1) as the appropriate definition of "agency."  This section defines agency as ". . . each authority of the Government of the United States, whether or not it is within or subject to review by another agency . . ." . . . .

> Although it has not addressed whether the Privacy Act can apply to non-federal agencies, the Third Circuit has held that the Freedom of Information Act does not apply to state governments.  The Privacy Act incorporates the Freedom of Information Act's definition of "agency."  Other circuits have addressed this specific issue and held that the Privacy Act applies only to federal agencies, not state or local agencies and not individuals.

<u>Fetzer</u>, 384 F. Supp. 2d at 815-16 (citations omitted).

defendants' motion to dismiss this claim—Count III of the complaint—and will deny leave to amend as futile.  See Grayson, 293 F.3d at 108.

E.    **Eavesdropping Claims**

Walsh brings three claims related to the alleged eavesdropping on a telephone call with his son by Krantz and an unknown Dallastown staff member:[21] (1) 18 U.S.C. §§ 2510-2520 (Federal Wiretapping Act), (2) 18 Pa. Cons. Stat. Ann. §§ 5703, 5704, 5725 (Pennsylvania Wiretap Act), and (3) 47 U.S.C. § 605 (unauthorized publication or use of communications).[22]

With respect to the first claim, the Federal Wiretapping Act provides a private right of action:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a).  A person violates the Federal Wiretapping Act if the person:

(a)    intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

(b)    intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication . . .

---

[21] The only defendants implicated by these claims are Krantz, an unknown Dallastown staff member, and the School District.  (See Doc. 1 at 11-12.)  Therefore, the court will grant the School District defendants' motion to dismiss these claims with respect to Young, Cathcart, Keeney, Heisey, and Weinberg without further discussion.

[22] These claims are brought individually and on behalf of his son.

(c)     intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d)     intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . .

Id. § 2511(1).

In the instant matter, the School District defendants argue, without offering any legal support, that the telephone conversation to which they are alleged to have eavesdropped was not a wire or oral communication under the Federal Wiretapping Act. (See Doc. 18 at 16.)  They also contend that Walsh had no expectation that the conversation would not be subject to interception because the alleged interception occurred on school premises while C.R.W. was in the presence of Krantz.  (Id. at 17.)  The court disagrees.  The complaint alleges that a private telephone conversation was intercepted by Krantz, with the assistance of an unknown Dallastown staff member.  The School District defendants do not set forth any authority for the proposition that this telephone conversation is not a wire communication.  See 18 U.S.C. § 2510(1) ("'[W]ire communication' means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . ."); see also, e.g., Briggs v. Am. Air Filter Co., 630 F.2d 414, 417 (5th Cir. 1980) (stating that under 18 U.S.C. § 2510(1)

16

"[a] telephone conversation is a wire communication").  A liberal reading of the

complaint, <u>see</u> <u>supra</u> note 3, reveals that Walsh does not allege that Krantz merely

overheard C.R.W.'s side of the conversation while C.R.W. was in his presence.

Instead, Walsh alleges that Krantz "eavesdropped" (i.e., listened in) on both sides of

their telephone conversation.  In addition, Walsh's use of "eavesdropped" and

"without authorization" in the complaint implies an expectation of privacy in the

conversation.[23]  In the restricted posture of a Rule 12(b)(6) motion,[24] the court finds

that the allegations of the *pro se* complaint are sufficient to state a claim under the

Federal Wiretapping Act.  Accordingly, the court will deny the School District

defendants' motion to dismiss this claim.

---

[23] The court notes that an expectation of privacy may not be required for a claim based on a *wire* communication.  <u>See, e.g.</u>, <u>PBA Local No. 38 v. Woodbridge Police Dep't</u>, 832 F. Supp. 808, 819 (D.N.J. 1993) (stating that a plaintiff's "reasonable expectation of privacy" was "irrelevant to statutory liability for the alleged interception of wire communications").  <u>Compare</u> 18 U.S.C. § 2510(2) (defining "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation"), <u>with id.</u> § 2510(1) (defining "wire communication" without referring to any expectation of privacy).

[24] The School District defendants' arguments are better suited for disposition in a motion for summary judgment.

Walsh's second claim relating to the alleged eavesdropping is brought under the Pennsylvania Wiretap Act.[25]  Under this Act, a plaintiff must demonstrate: "(1) that he engaged in [an oral] communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." Kline v. Security Guards, Inc., 386 F.3d 246, 257 (3d Cir. 2004) (quoting Agnew v. Dupler, 717 A.2d 519, 522 (Pa. 1998)).  Given the allegations discussed above, the court finds that the complaint sufficiently pleads a claim under the Pennsylvania Wiretap Act to survive a Rule 12(b)(6) motion.  See supra note 24. Accordingly, the court will deny the School District defendants' motion to dismiss this claim.

Walsh's final claim relating to the alleged eavesdropping involves 47 U.S.C. § 605, which provides, in part:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance,

---

[25] Like the Federal Wiretapping Act, the Pennsylvania statute provides a private right of action:

> Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication . . . .

18 PA. CONS. STAT. ANN. § 5725(a).

purport, effect, or meaning thereof, except through authorized
channels of transmission or reception . . . .

Id. § 605(a).  This statute provides a private right of action:  "Any person aggrieved

by any violation of subsection (a) of this section . . . may bring a civil action in a

United States district court . . . ."  Id. § 605(e)(3)(A).

In the matter *sub judice*, the School District defendants argue that the

complaint does not allege that the telephone conversation was an "interstate or

foreign communication" as required by § 605.  The court agrees.  The complaint is

devoid of any allegations that could be liberally construed to allege the "interstate

or foreign communication" required with respect to the telephone conversation at

issue.  Notably, Walsh does not address this argument in his brief in opposition.[26]

Accordingly, the court will grant the School District defendants' motion to dismiss

this claim—Count VI of the complaint.  However, the court will grant Walsh leave to

file an amended complaint with respect to this claim.[27]

---

[26] The brief in opposition to the School District defendants' motion to dismiss
incorrectly quotes a portion of § 605.  (See Doc. 33 at 16.)  The correct quotation is:
"No person not being authorized by the sender shall intercept any *radio*
communication and divulge or publish the existence, contents, substance, purport,
effect, or meaning of such intercepted communication to any person."  47 U.S.C.
§ 605(a) (emphasis added to the word missing in the brief in opposition).  The
complaint alleges a wire, not a radio, communication.  Indeed, the brief in
opposition states that the telephone call at issue was "made through a wire
telephone."  (Doc. 33 at 16.)  Therefore, the opposition based on this portion of the
statute is misplaced.

[27] See supra note 15.

**F.    42 U.S.C. § 1983**[28]

Section 1983 offers private citizens a means to redress violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[28] Plaintiff brings only individual claims under § 1983, not claims on behalf of his son.  (See Doc. 1 at 15 ("*Plaintiff* prays for entry of Judgment in *his* favor [on the § 1983 claims] against defendants . . . ." (emphasis added)); see also Doc. 33 at 10 n.6 ("Plaintiff has not entered a 1983 claim on behalf of minor C.R.W. . . .")).

Id. Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors.[29] Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, a plaintiff

must show a deprivation of a "right secured by the Constitution and the laws of the

---

[29] Municipalities and other local government entities may not be held liable under § 1983 for the acts of its employees under a theory of *respondeat superior* or vicarious liability.  See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a municipality or other local government entity may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Id. (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)).  The causation element of a municipal liability claim requires demonstration of "'a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'"  Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).  In the matter *sub judice*, the complaint does not allege a policy or custom of the School District that caused Walsh's alleged injury.  See Irene B. v. Phila. Academy Charter Sch., No. 02-1716, 2003 WL 24052009, at *11 (E.D. Pa. Jan. 29, 2003) ("A public school district is a municipal entity.")  Therefore, to the extent that Walsh brings § 1983 claims against the School District, the court will grant the motion to dismiss with respect to these claims.  However, the court will grant Walsh leave to file an amended complaint with respect to these claims.  See supra note 15.
    The School District argues that punitive damages are not available against it under § 1983.  (See Doc. 18 at 21.)  The court agrees.  See See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983"); see also Doe v. County of Centre, Pa., 242 F.3d 437, 456 (3d Cir. 2001).  Therefore, any amended complaint shall not include a request for punitive damages against the School District under § 1983.  The individual School District defendants argue that the complaint does not allege the required "callous or reckless indifference" for an award of punitive damages against them.  (See Doc. 18 at 21.)  At this motion to dismiss stage, see supra note 24, the court disagrees and will deny their request to dismiss any request for punitive damages against them.

United States . . . by a person acting under color of state law."[30]  Id. (quoting Mark v.

Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Although the complaint alleges multiple violations of 42 U.S.C. § 1983 (see

Doc. 1 at 12), it does not specifically state the federal rights implicated.  Liberally

construing the complaint, see supra note 3, the court finds that it raises:  (1) a

Fourteenth Amendment substantive due process claim against the School District

defendants[31] and Turner and (2) a Fourth Amendment claim against Krantz and an

unknown Dallastown staff member.[32]  The court will address these claims seriatim.

## 1.   <u>Fourteenth Amendment Substantive Due Process Claim</u>

The Fourteenth Amendment to the U.S. Constitution provides, in relevant

part, that "[n]o State shall . . . deprive any person of life, liberty, or property,

---

[30]  Defendants apparently concede, for purposes of the instant motions only, that they were acting "under color of state law" at all times relevant hereto.

[31]  But see note 29.

[32]  The complaint also states that Walsh and C.R.W. were deprived of their rights under 18 U.S.C. § 3771.  (See Doc. 1 ¶ 50.)  Section 3771 specifically provides that:

> Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages.

Id. § 3771(d)(6).  This subsection demonstrates that this statute does not create "an individually enforceable right."  City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120 (2005).  Therefore, § 1983 cannot provide a mechanism for relief of a violation of § 3771.  See id. at 119-21; see also infra note 39.  Accordingly, the court will grant the motions to dismiss the § 1983 claims premised on 18 U.S.C. § 3771 and will deny leave to amend as futile.

without due process of law." U.S. CONST. amend. XIV, § 1. "To establish a

substantive due process claim, a plaintiff must prove the particular interest at issue

is protected by the substantive due process clause and the government's

deprivation of that protected interest shocks the conscience." Chainey v. Street,

523 F.3d 200, 219 (3d Cir. 2008) (citing United Artists Theatre Circuit, Inc. v. Twp. of

Warrington, 316 F.3d 392, 400-02 (3d Cir. 2003)). Substantive due process does not

target government actions that are merely taken for an "improper purpose" or in

"bad faith." See United Artists Theatre, 316 F.3d at 400-02; Corneal v. Jackson

Twp., 313 F. Supp. 2d 457, 465-66 (M.D. Pa. 2003), aff'd, 94 F. App'x 76 (3d Cir.), cert.

denied, 543 U.S. 871(2004). "'Conscience shocking' actions go beyond actions

compensable in ordinary intentional and negligent tort law." Koehler ex rel.

Koehler v. Juniata County Sch. Dist., No. 1:07-CV-0117, 2008 WL 1787632, at *12

(M.D. Pa. Apr. 17, 2008) (citing Collings v. City of Harker Heights, Tex., 503 U.S. 115,

128 (1992)). In the matter sub judice, a liberal reading of the complaint, see supra

note 3, reveals that Walsh alleges a violation of the right to a public education where

he and his children reside and the right to privacy.

###   a.   Public Education

Walsh alleges a violation of his, and his children's, right to a public education

where they reside. However, Walsh, as an "adult male" (Doc. 1 ¶ 23), is not entitled

to a public education in Pennsylvania. See 24 PA. CONS. STAT. § 13-1301 ("Every

child, being a resident of any school district, between the ages of six (6) and

twenty-one (21) years, may attend the public schools in his district, subject to the

provisions of this act."). And, as previously discussed, Walsh cannot bring an individual claim for the alleged injuries of others. See supra Part III.A; see also supra note 28.

Assuming, *arguendo*, that Walsh was entitled to a public education or that he had brought this claim on behalf of C.R.W., this substantive due process claim still would not survive defendants' motions to dismiss. "[T]he Supreme Court has held that there is no fundamental right to [a] public education." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 (3d Cir. 2007) (citing San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973)). An entitlement to a public education, however, is found under state law. See Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 149 & n.3 (3d Cir. 2005). In the instant matter, the allegations of the complaint demonstrate that C.R.W. was not in any way deprived of a public education.[33] (See, e.g., Doc. 1 ¶ 55 (stating that defendants "*attempted* to deprive Plaintiff and his children of a public education" (emphasis added))). In addition, the court finds that the alleged conduct of defendants (e.g., recommending that C.R.W. be tested, changing due dates of assignments, calling Walsh names and otherwise attempting to precipitate an event at his residence, and restricting Walsh's access to the school) does not shock the conscience (i.e., it does not rise to the level of a substantive due process violation). Accordingly, the court will grant defendants' motions to dismiss

---

[33] See also infra note 35.

with respect to this substantive due process claim and will deny leave to amend as futile.[34]

###### b.   <u>Privacy</u>

The U.S. Constitution does not explicitly provide a right to privacy. However, under the substantive component of the Due Process Clause of the Fourteenth Amendment, "there are two clearly identifiable zones of privacy which have been afforded protection:  (1) one's interest in avoiding the disclosure of personal matters; and (2) the right to autonomy and independence in personal decision-making." <u>Konopka v. Borough of Wyoming</u>, 383 F. Supp. 2d 666, 677 (M.D. Pa. 2005) (citing <u>Whalen v. Roe</u>, 429 U.S. 589, 599-600 (1977).  The complaint alleges

---

[34] In opposing Turner's motion to dismiss, Walsh invokes the right to a public education.  (<u>See</u> Doc. 9 at 4.)  For the aforementioned reasons, this claim must fail. Walsh contends that Turner failed to conduct an impartial investigation into Young's conduct and that Turner "abused his position of trust[] and needs to be held accountable."  (<u>Id.</u>)  To the extent that this claim is based on allegations that Turner infringed upon Walsh's "right to be free from governmental interference in [his] family relationships unless the government adheres to procedural and substantive due process requirements," <u>see</u> <u>Meenan v. Harrison</u>, No. 06-2657, 2008 WL 364392, at *2 (3d Cir. Feb. 12, 2008), it also cannot survive Turner's motion to dismiss.  Accepting Walsh's allegations as true, they fail to demonstrate that Turner interfered with his relationship with his son.  <u>See</u> <u>id.</u>; <u>see also</u> note 35.

a violation of the first interest[35] when Cathcart informed C.R.W.'s teachers that

Walsh had refused to allow his son to be tested as Young had recommended.[36]

In the matter *sub judice*, the court finds that the information allegedly

disclosed does not fall within the ambit of personal matters that are protected

under the Fourteenth Amendment.  See, e.g., Jones/Seymour v. LeFebvre, 781 F.

Supp. 355, 358 (E.D. Pa. 1991) ("The constitutional right of privacy is not to be

equated with the common law right recognized by state tort law.  Thus far only the

---

[35] To the extent that the complaint attempts to allege a violation of the second privacy interest, see Konopka, 383 F. Supp. 2d at 677 ("Cases [involving the second privacy interest] describe the liberty interest in matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." (citing Doe v. Delie, 257 F.3d 309, 317 n.5 (3d Cir. 2001)), the claim must fail.  The court finds that the alleged actions of defendants do not rise to the level of a substantive due process violation in this context.  None of the allegations demonstrate, nor could they, that the defendants' actions prevented Walsh from making independent decisions regarding the rearing or education of C.R.W.  See id. (setting forth "the right to autonomy and independence in *personal decision-making*" (emphasis added)).  Indeed, the allegations make clear that Walsh was able to make such independent decisions when he refused to allow his son to be tested.  Therefore, the complaint does not support a Fourteenth Amendment substantive due process claim under the second privacy interest.  Accordingly, the court will dismiss this claim and deny leave to amend as futile.

[36] The alleged eavesdropping on a telephone call cannot form the basis of a Fourteenth Amendment substantive due process claim because such a claim falls under the purview of the Fourth Amendment.  The Fourteenth Amendment's "generalized notion of substantive due process" does not apply where, as here, "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior."  County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  An explicit source of protection is provided by the Fourth Amendment in the instant case, see infra Part III.F.2, so Walsh's alleged eavesdropping claim must fail to the extent that it is premised upon generalized notions of substantive due process.  See James v. York County Police Dept., 160 F. App'x 126, 132 n.3 (3d Cir. 2005).

most intimate phases of personal life have been held to be constitutionally

protected." (quoting <u>McNally v. Pulitzer Publishing Co.</u>, 532 F.2d 69, 76 (8th Cir.

1976))).  Walsh did not have a reasonable expectation that this information would

not be communicated to other teachers at C.R.W.'s school.[37]  <u>See</u> <u>C.N. v. Ridgewood</u>

<u>Bridgeport. of Educ.</u>, 430 F.3d 159, 179 (3d Cir. 2005) ("In determining whether

information is entitled to privacy protection, [this Court] has looked at whether it is

within an individual's reasonable expectations of confidentiality.").  Accordingly,

the court will grant the motions to dismiss with respect to this substantive due

process claim and deny leave to amend as futile.

### 2.    Fourth Amendment Claim

The Fourth Amendment prohibits "unreasonable searches and seizures."

U.S. CONST. amend IV.  Unlawful search and seizure claims require proof of an

unconstitutional invasion of a plaintiff's "reasonable expectation of privacy" or a

deprivation of his or her interest in property.  <u>See</u> <u>Soldal v. Cook County</u>, 506 U.S.

56, 62-64 (1992); <u>Rakas v. Illinois</u>, 439 U.S. 128, 133-35 (1978) (citing <u>Alderman v.</u>

<u>United States</u>, 394 U.S. 165, 174 (1969)).  In the matter *sub judice*, the complaint's

allegations of eavesdropping by Krantz and an unknown Dallastown staff member

are sufficient to survive a motion to dismiss.[38]  Therefore, the court will deny the

School District defendants' motion to dismiss the Fourth Amendment claim

---

[37] Even if Walsh had brought this claim on behalf of C.R.W., the court's findings would remain unchanged.

[38] <u>See</u> <u>supra</u> note 24.

brought pursuant to 42 U.S.C. § 1983 against Krantz and an unknown Dallastown

staff member.[39]

---

[39] In his brief in opposition to the School District defendants' motion to dismiss, Walsh also appears to argue that he has § 1983 claims premised on the alleged violations of the Federal Wiretapping Act, 47 U.S.C. § 605, and the Privacy Act.  The court disagrees.  As an initial matter, the court notes that 1983 is not required to bring a civil action under these statutes.  As Walsh correctly points out, these statutes provide for a private right of action.  See supra Part III.D, E.

With respect to the § 1983 claims premised on alleged violations of the Federal Wiretapping Act and 47 U.S.C. § 605, the court notes that "§ 1983 does not provide an avenue for relief every time a state actor violates a federal law." Rancho Palos Verdes, 544 U.S. at 119.  The parties do not dispute that these statutes create individually enforceable rights,  which results in "a rebuttable presumption that the right[s are] enforceable under § 1983." Id. at 120.  However, "defendant[s] may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." Id.  The court finds that the private remedial provisions in the Federal Wiretapping Act and 47 U.S.C. § 605 rebut this presumption.  See A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 801 (3d Cir. 2007) (citing Rancho Palos Verdes, 544 U.S. at 121); see also Anderson v. City of Columbus, Ga., 374 F. Supp. 2d 1240, 1252-53 (M.D. Ga. 2005) (finding that a plaintiff cannot maintain a § 1983 claim premised on the Federal Wiretapping Act "because she is already able to vindicate her statutory rights . . . by bringing a civil action for damages as authorized in that statute").  Likewise, Walsh has not identified, nor has the court found, any "textual indication, express or implicit, that the remedy [in either statute] is to complement, rather than supplant, § 1983." A.W., 486 F.3d at 801.  Therefore, the court finds that Congress did not intend for § 1983 to be available to remedy violations of the Federal Wiretapping Act or 47 U.S.C. § 605.  Accordingly, the court will grant the motions to dismiss the § 1983 claims premised on these statutes and will deny leave to amend as futile.  This ruling does not affect the court's ruling on the claims brought *directly* under these statutes.  See supra Part III.E.

With respect to the Privacy Act claim, the court has already found that it cannot be brought against a non-federal agency.  See supra Part III.D.  Therefore, even assuming a Privacy Act claim could be brought under § 1983, such a § 1983 claim must fail in the instant matter because the complaint does not name a federal agency as a defendant.  Accordingly, the court will grant the motions to dismiss the § 1983 claims premised on the Privacy Act and will deny leave to amend as futile.

**IV.**   **Conclusion**

For the foregoing reasons, the motions to dismiss will be granted in part and

denied in part.  An appropriate order will issue.


　S/ Christopher C. Conner　
CHRISTOPHER C. CONNER
United States District Judge


Dated:        June 4, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RORY M. WALSH, individually and as Natural Guardian of C.R.W., | : | CIVIL ACTION NO. 1:07-CV-0616 |
| | : | |
| | : | (Judge Conner) |
| Plaintiff | : | |
| v. | : | |
| | : | |
| DR. ROBERT KRANTZ, SHARI A. YOUNG, SUE A. CATHCART, JUDY KEENEY, KELLY HEISEY, UNKNOWN DALLASTOWN STAFF MEMBER, DR. STEWART WEINBERG, DALLASTOWN AREA SCHOOL DISTRICT, STEVEN L. TURNER, and PENNSYLVANIA DEPARTMENT OF EDUCATION, | : : : : : : : : : : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 4th day of June, 2008, upon consideration of defendants'

motions to dismiss (Docs. 3, 11), and the order of court dated February 14, 2008

(Doc. 45) staying the pretrial and trial schedule pending disposition of the instant

motions, and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that the motions to dismiss (Docs. 3, 11) are GRANTED in part

and DENIED in part as follows:

1.    The following claims are DISMISSED:

   a.    All *individual* claims of plaintiff Rory M. Walsh for the alleged
         injuries sustained by his son.

   b.    All claims under 18 U.S.C. § 241 (Count I), 18 U.S.C. § 119 (Count
         IV), and 18 U.S.C. § 875 (Count IX).

   c.    All claims under 42 U.S.C. § 1985 (Count II).

      d.     All claims under the Privacy Act (Count III).

      e.     All claims under the Federal Wiretapping Act (Count V) and the Pennsylvania Wiretap Act (Count VII) against defendants Shari A. Young, Sue A. Cathcart, Judy Keeney, Kelly Heisey, and Dr. Stewart Weinberg.

      f.     All claims under 47 U.S.C. § 605 (Count VI).

      g.     All claims under 42 U.S.C. § 1983 (Count VIII) premised on the substantive component of the Due Process Clause of the Fourteenth Amendment, the Federal Wiretapping Act, 47 U.S.C. § 605, the Privacy Act, and 18 U.S.C. § 3771.

2.     Plaintiff is GRANTED leave to file an amended complaint,[40] on or before June 18, 2008, with respect to the following claims:[41]

      a.     Claim under 47 U.S.C. § 605

      b.     Fourth Amendment claim against defendant Dallastown Area School District brought pursuant to 42 U.S.C. § 1983.[42]

3.     Leave to amend is DENIED as futile with respect to all other dismissed claims.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

---

[40] Any amended complaint shall also include the claims not dismissed in this memorandum and order.  See infra ¶ 5.

[41] Plaintiff shall only file an amended complaint with respect to these claims if they "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and if "the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery."  FED. R. CIV. P. 11(b).

[42] See supra note 29.

4.      If plaintiff files an amended complaint, plaintiff shall specify in the amended complaint:

      a.      Which claims are brought individually and which claims are brought on behalf of C.R.W.

      b.      Which defendants are implicated by each claim.

5.      Plaintiff is advised that he is not required to file an amended complaint for the instant matter to proceed.  Failure to file a timely amended complaint will result in the case proceeding on the following claims:

      a.      Plaintiff's individual claims and claims on behalf of C.R.W. pursuant to the Federal Wiretapping Act (Count V) and the Pennsylvania Wiretap Act (Count VII) against defendants Dr. Robert Krantz, an unknown Dallastown staff member, and the Dallastown Area School District for the alleged eavesdropping on a telephone conversation between plaintiff and his son.

      b.      Plaintiff's individual[43] Fourth Amendment claim pursuant to 42 U.S.C. § 1983 (Count VIII) against defendants Dr. Robert Krantz and an unknown Dallastown staff member for the alleged eavesdropping on a telephone conversation between plaintiff and his son.

6.      The following pretrial schedule shall apply in the instant matter:

      a.      Discovery in the above-captioned matter shall be completed on or before September 16, 2008.

      b.      The parties shall be permitted to file, on or before September 30, 2008, dispositive motions with supporting briefs and statements of material fact.  See FED. R. CIV. P. 56; L.R. 7.5, 56.1.  Failure to file a supporting brief or statement of material facts in accordance with federal and local rules shall result in the motion being deemed withdrawn.

---

[43] See supra note 28.

3

   c.  Plaintiff's expert reports shall be provided to defendants on or before September 30, 2008.[44]

   d.  Defendants' expert reports shall be provided to plaintiff on or before October 31, 2008.  See supra note 44.

   e.  Supplemental/rebuttal expert reports shall be provided to the opposing parties on or before November 14, 2008.  See supra note 44.

 7.  Upon resolution of any dispositive motions, the court shall issue a revised pretrial and trial schedule if necessary.


         S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge

---

[44] The parties shall *not* separately file expert reports with the court.  An expert report shall only be filed with the court in conjunction with a dispositive motion that refers to the report.  But see Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989) ("The substance of this report was not sworn to by the alleged expert. Therefore, the [expert] report is not competent to be considered on a motion for summary judgment."); see also FED. R. CIV. P. 56(e).