## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RORY M. WALSH, individually and as Natural Guardian of C.R.W. and, S.J.W., | : : : | CIVIL ACTION NO. 1:07-CV-0616 |
| Plaintiffs | : | (Judge Conner) |
| v. | : | |
| | : | |
| DR. ROBERT KRANTZ, SHARI A. YOUNG, SUE A. CATHCART, JUDY KEENEY, KELLY HEISEY, UNKNOWN DALLASTOWN STAFF MEMBER, DR. STEWART WEINBERG, DALLASTOWN AREA SCHOOL DISTRICT, CATHY STONE, and GREG ANDERSON, | : : : : : : : : : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court is a motion, filed by defendants, Dr. Robert Krantz ("Krantz"), Shari A. Young ("Young"), Sue A. Cathcart ("Cathcart"), Judy Keeney ("Keeney"), Kelly Heisey ("Heisey"), Dr. Stewart Weinberg ("Weinberg"), Cathy Stone ("Stone"), Greg Anderson ("Anderson"), and the Dallastown Area School District ("School District"),[1] to dismiss the claims of *pro se* plaintiff Rory M. Walsh ("Walsh") brought individually and on behalf of his sons, C.R.W. and S.J.W.  For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] Former defendants Steven L. Turner and the Pennsylvania Department of Education have been dismissed and are no longer parties to the above-captioned action.  (See Docs. 43, 46, 59; see also Doc. 55.)

I.    **Statement of Facts**[2]

According to the amended complaint, this lawsuit arises from numerous
incidents plaintiff and his sons have had to endure while his sons have attended
Dallastown Area schools.  The incidents started in 2004 when Mrs. Zarfoss, an
English teacher at Dallastown Area Middle School, arrived at Walsh's residence on
a Sunday without prior notification and purportedly proceeded to curse and insult
Walsh.  Since that time, Krantz, then-principal of Dallastown Area Middle School,
and others have allegedly retaliated against Walsh for Walsh's attempts to report
the abuses suffered by him and his sons.  For example, Krantz and Heisey
purportedly attempted to have C.R.W. removed from Walsh's custody.  (Doc. 52 at 3
¶ 9, 4-7 ¶ 12.)  It is also alleged that defendants attempted to prohibit S.J.W. from
entering the Dallastown Area Middle School.  The School District asked Walsh for a
copy of his lease, but did not require all families to provide proof of residence in the
district.  (Id. at 5.)  In addition, Stone allegedly attempted to assign S.J.W. to a lower

---

[2] In accordance with the standard of review for a motion to dismiss, the court
will present the facts as alleged in the amended complaint.  See infra Part II.
Because the plaintiff is proceeding in this matter pro se, the court has liberally
construed the pleading's averments.  See Leamer v. Fauver, 288 F.3d 532, 547-48 (3d
Cir. 2002).  The statements contained herein reflect neither the findings of the trier
of fact nor the opinion of the court as to the reasonableness of the allegations.

grade level in math, and Stone and Anderson refused to discuss this decision with Walsh.[3]  (Id. at 6.)

On March 29, 2006, Krantz allegedly blocked the first of two telephone calls from Walsh to C.R.W.[4]  With the assistance of an unknown Dallastown staff member, Krantz allegedly eavesdropped on a subsequent telephone conversation between Walsh at his office and C.R.W. at school.  An email from Krantz to Walsh purportedly revealed the contents of the conversation between Walsh and his son and "expressed [Krantz's] fury that a parent would call his school, twice in the same day."[5]  (Id.  at 7 ¶¶ 2-3, 8 ¶ 6, 9-10 ¶¶ 12-13, 15.)

On May 19, 2008, Walsh received a request from the School District for his consent to an evaluation of C.R.W.[6]  The request stated, in part:

> [C.R.W.] is referred for a multidisciplinary evaluation to establish his levels of cognitive and academic functioning to ensure appropriate educational programming.
>
> We request your consent to conduct an evaluation of your child. . . . Giving your consent for evaluation does not mean you give consent to special education placement or services.  In the evaluation, we will review your child's educational needs and strengths (as shown by academic achievement, functional performance, a review of existing

---

[3] Dr. Doll, the Middle School principal and, according to the amended complaint, the "voice of reason," recommended that Stone reconsider placing S.J.W. in a lower grade level in math.  (Doc. 52 at 6.)  Walsh signed a waiver for S.J.W. to be kept at his current grade level in math.  (Id. at 13.)

[4] According to the amended complaint, this was not the first time Krantz blocked Walsh's access to his son at school.  (Doc. 52 at 9 ¶ 12.)

[5] Walsh did not attach the email to the complaint.

[6] This was the second such request.  (Doc. 52 at 6.)

data, current classroom[] based observations and evaluations, local
and state assessments, and information from you).  Specific types of
assessment tools, tests and procedures that will be used in the
evaluation include the following:

> The PSYCHOLOGICAL EVALUATION may include the
> following instruments:  (1) intelligence, (2) achievement,
> (3) visual motor perception, (4) personality, (5) hemispheric
> performance/neuro/psychological only, (6) clinical interviews,
> (7) observation forms, (8) checklists and/or (9) any other
> materials deemed necessary by the certified public school
> psychologist.

> \* \* \*

> The multidisciplinary team must determine whether your child
> is a child with a disability and will prepare recommendations
> regarding your child's educational programs, and whether your child
> is in need of, and is eligible for special education and related
> services. . . .

(Id., Ex. B.)  Walsh refused consent for the evaluation.  (Id.)  He alleges that no

incident precipitated such a request from the School District (id. at 6) and that

C.R.W. is a "stellar" performer in school (id. at 13; see also id., Ex. C).  According to

the amended complaint, Weinberg and Heisey ordered Lydia Schnetzka at the

Special Education Office to deliver this request for evaluation of C.R.W. to Walsh

each year that C.R.W. is in the Dallastown Area schools.  (Id. at 6-7, 12 ¶ 21.)

Walsh commenced the instant action on April 2, 2007.  (See Doc. 1.)  The

memorandum and order of court dated June 4, 2008 (Doc. 46) dismissed all claims

except:  (1)  Walsh's individual claims and claims on behalf of C.R.W. pursuant to

the Federal Wiretapping Act and the Pennsylvania Wiretap Act against defendants

Krantz, an unknown Dallastown staff member, and the School District for the

alleged eavesdropping on a telephone conversation between plaintiff and his son, and (2) Walsh's individual Fourth Amendment claim pursuant to 42 U.S.C. § 1983 against defendants Krantz and an unknown Dallastown staff member for the same incident. The court also granted Walsh leave to amend with respect to certain claims.[7]

On June 25, 2008, Walsh filed an amended complaint. (See Doc. 52.) Along with the claims not previously dismissed, Walsh brings the following claims in the amended complaint: (1) Walsh's individual claim pursuant to 47 U.S.C. § 605 against Krantz and an unknown Dallastown staff member, (2) Walsh's individual claim and claim brought on behalf of C.R.W. under the Fourth Amendment pursuant to 42 U.S.C. § 1983 against Krantz, an unknown Dallastown staff member, and the School District, (3) claims on behalf of C.R.W. and S.J.W. for breach of fiduciary trust against Krantz, Cathcart, Weinberg, Heisey, Young, Anderson, and Stone, (4) Walsh's individual claim and claims on behalf of C.R.W. and S.J.W. for intentional infliction of emotional distress against Krantz, Cathcart, Weinberg, Heisey, Young, Anderson, Stone, and Keeney, (5) Walsh's individual claim and claims on behalf of C.R.W. and S.J.W. for negligent infliction of emotional distress against Krantz, Cathcart, Weinberg, Heisey, Young, Anderson, Stone, and Keeney, and (6) Walsh's individual claim and claim on behalf of C.R.W. pursuant to

---

[7] Following a telephone conference on June 10, 2008 (see Doc. 47), the court granted Walsh an extension of time to file an amended complaint in compliance with the June 4, 2008 order and with Rule 15 of the Federal Rules of Civil Procedure (see Doc. 48).

42 U.S.C. § 1981.[8]  (Doc. 52; see also Doc. 55.)  Defendants filed a motion to dismiss these new claims.[9]  The motion has been fully briefed and is ripe for disposition.

## II.    **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Sershen v.

---

[8] The amended complaint erroneously refers to *21* U.S.C. § 1981 (see Doc. 52 at 14), but the exhibits to Walsh's brief in opposition to the motion to dismiss refer to the correct statute—*42* U.S.C. § 1981 (see Doc. 66, Ex. E).

[9] The order of court dated June 26, 2008 (Doc. 53) stayed discovery on the new claims unrelated to the alleged eavesdropping.  Given the court's disposition of the instant motion, see infra, this stay is now deemed moot.

Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting

Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must

present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P.

8(a) (stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ---

U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to

"raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499

F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure

to state a claim if it "contain[s] either direct or inferential allegations respecting all

the material elements necessary to sustain recovery under some viable legal

theory."  Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567,

at *2 (3d Cir. 2007) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1969).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).

## III.   Discussion

The instant motion seeks to dismiss the following claims:  (1) Walsh's

individual claim pursuant to 47 U.S.C. § 605, (2) the claim brought on behalf of

C.R.W. under the Pennsylvania Wiretap Act, (3) Walsh's individual claim and claim

brought on behalf of C.R.W. under the Pennsylvania Wiretap Act against the School

District and Krantz, (4) Walsh's individual claim and claim brought on behalf of

C.R.W. under the Fourth Amendment pursuant to 42 U.S.C. § 1983 against the

School District, (5) the claims on behalf of C.R.W. and S.J.W. for breach of fiduciary

trust, (6) Walsh's individual claim and claims on behalf of C.R.W. and S.J.W. for

intentional infliction of emotional distress, (7) Walsh's individual claim and claims

on behalf of C.R.W. and S.J.W. for negligent infliction of emotional distress, and

(8) Walsh's individual claim and claim on behalf of C.R.W. pursuant to 42 U.S.C.

§ 1981.  The court will address these claims *seriatim*.

A.    **47 U.S.C. § 605**

Section 605 of Title 47 of the United States Code provides:

> [1] [N]o person receiving, assisting in receiving, transmitting, or
> assisting in transmitting, any *interstate or foreign communication* by
> *wire or radio* shall divulge or publish the existence, contents,
> substance, purport, effect, or meaning thereof . . . . [2] No person not
> being authorized by the sender shall intercept any *radio*
> communication and divulge or publish the existence, contents,
> substance, purport, effect, or meaning of such intercepted
> communication to any person.  [3] No person not being entitled thereto
> shall receive or assist in receiving any interstate or foreign
> communication by *radio* and use such communication (or any
> information therein contained) for his own benefit or for the benefit of
> another not entitled thereto.  [4] No person having received any
> intercepted *radio* communication or having become acquainted with
> the contents, substance, purport, effect, or meaning of such
> communication (or any part thereof) knowing that such
> communication was intercepted, shall divulge or publish the existence,
> contents, substance, purport, effect, or meaning of such
> communication (or any part thereof) or use such communication (or
> any information therein contained) for his own benefit or for the
> benefit of another not entitled thereto.

47 U.S.C. § 605(a) (emphasis added).  In the instant matter, the amended complaint

alleges that Krantz and an unknown Dallastown staff member eavesdropped on a

8

*wire* communication.  (See Doc. 52 at 9 ("[Walsh's] office phone[] and the phone at the school were and remain HARD-WIRED.")).  Therefore, the second, third, and fourth sentences of § 605(a), which apply only to *radio* communications, are inapplicable in this case.  See 47 U.S.C. § 605(a).  The only sentence which applies—the first sentence—requires "interstate or foreign communication."  Id.

The memorandum and order dated June 4, 2008 (Doc. 46) dismissed the § 605 claim from the original complaint, but granted leave to amend, because the original complaint was "devoid of any allegations that could be liberally construed to allege the 'interstate or foreign communication' required with respect to the telephone conversation at issue."  (Doc. 46 at 19.)  The amended complaint does not allege interstate or foreign communication.  Instead, it clearly alleges an intrastate communication by citing three cases—Nardone v. United States, 302 U.S. 379 (1937), Weiss v. United States, 308 U.S. 321 (1939), and Lee v. Florida, 392 U.S. 378 (1968)—and stating that § 605 also applies to intrastate communications.  (See Doc. 52 at 8 ¶¶ 7, 9; see also Doc. 66 at 7-8.)

In the instant matter, the reliance on these cases is misplaced.  First, Nardone involved wiretapping of *interstate* communications.  See Nardone, 302 U.S. at 380 (examining the applicability of § 605 to "federal agents [who] testified to the substance of petitioners' *interstate* communications" (emphasis added)).  Second, Weiss found intrastate communications covered by the *second* sentence of § 605(a) which, in 1939, stated that "no person not being authorized by the sender shall intercept *any communication* and divulge or publish the existence, contents,

substance, purport, effect, or meaning of such intercepted communication to any person." Weiss, 308 U.S. at 327 (emphasis added).  As discussed supra, the second sentence of § 605(a) now applies only to *radio* communications, see 47 U.S.C. § 605(a) (2008), and is inapplicable in the instant case.  Finally, Lee involved the same, older version of the second sentence of § 605(a) as in Weiss that now applies only to radio communications.  See Lee, 392 U.S. at 379 ; see also 47 U.S.C. § 605, 1968 amend. (noting the insertion of "radio" before "communication" in the second and fourth sentences of § 605(a)).[10]  Therefore, the allegations of the amended complaint, liberally construed, are insufficient to state a claim pursuant to § 605.

Even assuming that the amended complaint alleged the requisite interstate or foreign communication, the claim would nevertheless fail.  The first sentence of § 605(a) requires that the alleged violator be a "person receiving, assisting in receiving, transmitting, or assisting in transmitting" the communication.  47 U.S.C. § 605(a).  In other words, "only legitimate communication personnel may violate the prohibitions of the first sentence" of § 605(a).  Joe Hand Promotions, Inc. v. Rennard Street Enters., Inc., 954 F. Supp. 1046, 1052 (E.D. Pa. 1997).[11]  The alleged

---

[10] Lee was decided on June 17, 1968, see 392 U.S. at 378, and the 1968 amendment to § 605 took effect on June 19, 1968, see Pub. L. No. 90-351, 82 Stat. 197 (1968).

[11] See also Edwards v. State Farm Ins. Co., 833 F.2d 535, 540 (5th Cir. 1987) ("[T]he first sentence of section 605 . . . regulates the conduct of communications personnel . . . ."); Gen. Steel Contractors, Inc. v. Ortez, No. 5:05-CV-00087-R, 2007 WL 214454, at *4 (W.D. Ky. Jan. 24, 2007) (same); Gen Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc., No. CIV.A. 93-CV-3854, 1996 WL 402511, at *4 (E.D. Pa. Apr. 12, 1996) (same).

violators—Krantz and an unknown Dallastown staff member—are school district employees, not "legitimate communication personnel." Therefore, they may not be held liable under the first sentence of § 605(a). Accordingly, the court will grant the motion to dismiss the § 605 claim[12] and will deny leave to amend as futile. See Grayson, 293 F.3d 103 at 108.

### B.   Pennsylvania Wiretap Act

Walsh brings an individual claim and a claim on behalf of C.R.W. under sections 5703, 5704, and 5725 of the Pennsylvania Wiretap Act, see 18 Pa. Cons. Stat. Ann. §§ 5703, 5704, 5725, against Krantz, an unknown Dallastown staff member, and the School District. Defendants contend that C.R.W., as the recipient,

---

[12] The court is faced with the question of whether to dismiss, *sua sponte*, this claim against the unknown Dallastown staff member who could not join in defendants' motion to dismiss because he or she has yet to be identified or served with the amended complaint. *Sua sponte* dismissal of claims is ordinarily disfavored. Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002). If, however, the basis for dismissal is apparent from the face of the complaint, *sua sponte* dismissal may be appropriate as a means of prompt and efficient disposition of cases that lack "a shred of a valid claim." Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990); see also Ray, 285 F.3d at 297. Before *sua sponte* dismissal is appropriate, however, a court must give the plaintiff notice and an opportunity to be heard on the legal viability of his complaint. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006); Dougherty v. Harper's Magazine Co., 537 F.2d 758, 761 (3d Cir. 1976). That notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to multiple defendants. See Pourghoraishi, 449 F.3d at 765-66; Coggins v. Carpenter, 468 F. Supp. 270, 279 (E.D. Pa. 1979). In the instant case, defendants' motion put Walsh on notice of the legal arguments regarding this claim. The court safely assumes that Walsh marshaled every fact and argument of law at his disposal to invalidate defendants' arguments and that his response to a similar motion by the unknown Dallastown staff member would have been no different. Accordingly, the court concludes that *sua sponte* dismissal of this claim against the unknown Dallastown staff member is appropriate.

not the originator, of the communication at issue, lacks standing to maintain his claim under the Pennsylvania Wiretap Act. In addition, defendants argue that the School District and Krantz are entitled to immunity from this claim pursuant to the Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. ANN. § 8541. The court will address these arguments *seriatim*.

        1.    **<u>Standing</u>**

To establish a prima facie case under § 5725 the Pennsylvania Wiretap Act, a plaintiff must establish: "(1) that he engaged in [an oral] communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." <u>Kline v. Sec. Guards, Inc.</u>, 386 F.3d 246, 257 (3d Cir. 2004). Examining this four-part test, the District Court for the Eastern District of Pennsylvania concluded that the *recipient* of the communication lacked standing to bring a claim under the Pennsylvania Wiretap Act because the recipient could not meet the first requirement. <u>See</u> <u>Klump v. Nazareth Area Sch. Dist.</u>, 425 F. Supp. 2d

622, 632-33 (E.D. Pa. 2006).[13]  The court agrees with its sister court.  Therefore,

C.R.W., the recipient of the communication at issue, lacks standing to maintain his

claim under the Pennsylvania Wiretap Act.  Accordingly, the court will grant the

motion to dismiss the Pennsylvania Wiretap Act claim brought on behalf of C.R.W.

and will deny leave to amend as futile.[14]  See Grayson, 293 F.3d at 108.

## 2.  Political Subdivision Tort Claims Act

The School District and Krantz contend that they are entitled to immunity

pursuant to the Political Subdivision Tort Claims Act ("TCA").  With respect to the

School District, the TCA provides:

> Except as otherwise provided . . . no local agency shall be liable
> for any damages on account of any injury to a person or property
> caused by any act of the local agency or an employee thereof or any
> other person.

18 PA. CONS. STAT. ANN. § 8541.  The exceptions to this immunity include specific

acts of *negligence*.  See id. § 8542.  In the instant matter, the amended complaint

---

[13] In opposing defendants' contention that C.R.W. lacks standing to bring the Pennsylvania Wiretap Act claim, Walsh quotes Klump for the proposition that "either the sender or recipient has standing."  (See Doc. 66 at 11.)  This argument is misplaced.  The Klump court stated that "*section 5741* [of the Act] suggests that either the sender or recipient has standing."  Klump, 425 F. Supp. 2d at 628 (emphasis added).  Notably, the amended complaint does *not* contain a claim under section 5741.  (See Doc. 52 at 9 (bringing claims under sections 5703, 5704, and 5725 of the Pennsylvania Wiretap Act)).  And, section 5741 is inapplicable to the instant matter where Krantz is alleged to have eavesdropped on a *live* telephone conversation.  See 18 PA. CONS. STAT. ANN. § 5741 (providing that "it is an offense to obtain, alter or prevent authorized access to a wire or electronic communication *while it is in electronic storage*" (emphasis added)).

[14] See supra note 12.

alleges *intentional* conduct by Krantz and an unknown Dallastown staff member with respect to the Pennsylvania Wiretap Act claims. Indeed, the Pennsylvania Wiretap Act requires intentional conduct. See 18 PA. CONS. STAT. ANN. § 5703. Therefore, the exceptions are inapplicable, and the School District is entitled to immunity from the Pennsylvania Wiretap Act claims. See, e.g., Klump, 425 F. Supp. 2d at 637 (finding a School District immune from Pennsylvania Wiretap Act claims under the TCA because the claims require intentional conduct); DiSalvio v. Lower Merion High Sch. Dist., 158 F. Supp. 2d 553 (E.D. Pa. 2001). Accordingly, the court will grant the motion to dismiss the Pennsylvania Wiretap Act claims—Count III of the amended complaint—against the School District and deny leave to amend as futile. See Grayson, 293 F.3d at 108.

With respect to government officials, the TCA provides for the same immunity as for local agencies. See 18 PA. CONS. STAT. ANN. § 8545 ("An employee of a local agency is liable for civil damages . . . only to the same extent as his employing local agency . . . ."). If, however, a defendant's actions resulted from "willful misconduct," the defendant is not shielded by this immunity. Id. § 8550. For purposes of immunity, "willful misconduct is synonymous with intentional tort." Cameron v. Johnson, Civ. A. No. 05-5758, 2006 WL 1878329, at *3 (E.D. Pa. July 6, 2006) (citing Kuzel v. Krause, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995)). As discussed, supra, the conduct alleged for the Pennsylvania Wiretap Act claims is intentional conduct. Therefore, the court cannot conclude at the motion to dismiss stage that Krantz is entitled to immunity under the TCA. Accordingly, the court

14

will deny the motion to dismiss Walsh's individual claim[15] against Krantz under the

Pennsylvania Wiretap Act.

### C.     Fourth Amendment Claim Against Dallastown Area School District

Walsh alleges a Fourth Amendment violation against the School District

pursuant to 42 U.S.C. § 1983.  (See Doc. 52; see also Doc. 55 ¶ 4.)  The memorandum

and order of court dated June 4, 2008 dismissed this claim against the School

District, stating:

> Municipalities and other local government entities may not be
> held liable under § 1983 for the acts of its employees under a theory of
> *respondeat superior* or vicarious liability.  See Bridgeport. of County
> Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper
> Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a
> municipality or other local government entity may be held liable if the
> plaintiff can "identify a municipal 'policy' or 'custom' that caused the
> plaintiff's injury."  Id. (citing Monell v. Dep't of Social Servs., 436 U.S.
> 658, 694 (1978)*).*  A policy is an official proclamation or edict of a
> municipality, while a custom is a practice that is "so permanent and
> well settled as to virtually constitute law."  Beck v. City of Pittsburgh,
> 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of
> Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)).
> The causation element of a municipal liability claim requires
> demonstration of "'a direct causal link between [the] municipal policy
> or custom and the alleged constitutional deprivation.'"  Brown v.
> Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of
> Canton v. Harris, 489 U.S. 378, 385 (1989)).  In the matter *sub judice*,
> the [original] complaint does not allege a policy or custom of the
> School District that caused Walsh's alleged injury.  See Irene B. v.
> Phila. Academy Charter Sch., No. 02-1716, 2003 WL 24052009, at *11
> (E.D. Pa. Jan. 29, 2003) ("A public school district is a municipal
> entity.")  Therefore, to the extent that Walsh brings § 1983 claims
> against the School District, the court will grant the motion to dismiss

---

[15] See supra Part III.B.1 (dismissing all Pennsylvania Wiretap Act claims
brought on behalf of C.R.W.).

with respect to these claims.  However, the court will grant Walsh
leave to file an amended complaint with respect to these claims.

(Doc. 46 at 21 n.29.)

In his brief in opposition to the instant motion, Walsh contends that Krantz
"was the policy making authority for his school," thus imposing § 1983 liability on
the School District for Krantz's actions.  (See Doc. 66 at 9-10); see also McGreevy v.
Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (stating that liability under § 1983 for a
municipality "will attach when the individual has policy making authority
rendering his or her behavior an act of official government policy" (citing Pembaur
v. City of Cincinnati, 475 U.S. 469, 480-81 (1986))).  A liberal reading of the amended
complaint, see supra note 2, reveals that it sufficiently alleges a § 1983 claim against
the School District based on Krantz's alleged policy-making authority.[16]  Therefore,
the court will deny the motion to dismiss the § 1983 Fourth Amendment claim
against the School District.

---

[16] Although the amended complaint does not specifically allege this theory of
§ 1983 municipal liability, the brief in opposition helps to elucidate the numerous
allegations of the amended complaint.  The court is confident that a second
amended complaint would merely set forth the arguments contained in Walsh's
brief in opposition.  Therefore, in the interest of moving the above-captioned case
forward as expeditiously as possible, the court finds it unnecessary to require a
second amended complaint for the School District to be able to challenge this claim.

D.      **Breach of Fiduciary Trust**

Walsh brings claims on behalf of C.R.W. and S.J.W. for a breach of fiduciary

trust.

> "[T]he general test for determining the existence of . . . a [fiduciary]
> relationship is whether it is clear that the parties did not deal on equal
> terms." . . . [A] fiduciary relationship will be found to exist "when the
> circumstances make it certain the parties do not deal on equal terms,
> but, on the one side there is an overmastering influence, or, on the
> other, weakness, dependence, or trust, justifiably reposed; in both an
> unfair advantage is possible."

Vicky M. v. Ne. Educ. Intermediate Unit 19, 486 F. Supp. 2d 437, 458 (M.D. Pa. 2007)

(quoting Frowen v. Blank, 425 A.2d 412, 416 (Pa. 1981)).  If a fiduciary relationship

exists, a breach of a fiduciary duty occurs when:  (1) "the defendant negligently or

intentionally failed to act in good faith and solely for the benefit of plaintiff in all

matters for which he or she was employed;" (2) "the plaintiff suffered injury;" and

(3) "the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in

bring about plaintiff's injuries."  McDermott v. Party City Corp., 11 F. Supp. 2d 612,

626 n.18 (E.D. Pa. 1998) (quoting Pa. Suggested Standard Civil Jury Instructions

§ 4.16 (1991)).

Assuming, *arguendo*, that a fiduciary relationship exists between defendants

and each of Walsh's sons, the breach of fiduciary duty claims nonetheless fail.

> The basic duties which arise from the teacher-student
> relationship are a duty to supervise, a duty to exercise good judgment,
> and a duty to instruct as to correct procedures, particularly, not but
> exclusively, when potentially hazardous conditions or
> instrumentalities are present, and these basic duties must co-exist with
> the whole purpose for the teacher-student relationship, viz. education.

17

Vicky M, 486 F. Supp. 2d at 458 (citing Bottorf v. Waltz, 369 A.2d 332, 334 (Pa. Super. Ct. 1976)).  The amended complaint alleges that Weinberg and Heisey breached a fiduciary duty by ordering the Special Education Office to deliver a request for evaluation of C.R.W. to Walsh each year that C.R.W. is in the Dallastown Area schools and that Stone and Anderson breached a fiduciary duty by attempting to assign S.J.W. to a lower grade level in math and refusing to discuss the matter with Walsh.[17]  (See Doc. 52 at 12 ¶ 21.)  The court finds that such conduct is not a breach of any fiduciary duty.[18]  Notably, the alleged conduct involved *recommendations* by defendants that Walsh could, and in fact did, refuse.  As the amended complaint and brief in opposition reveal, C.R.W. and S.J.W. experienced no actual change in their educational status at school.  Walsh's mere disagreement with the educational recommendations and practices, without more, does not

---

[17] In an attempt to oppose the dismissal of his sons' breach of fiduciary duty claims, Walsh refers to conduct directed towards him—e.g., Krantz allegedly ordering Walsh into his office and threatening to have Walsh arrested.  (Doc. 66 at 15.)  Such allegations do not demonstrate an injury to C.R.W. or S.J.W., nor do they involve a teacher-student relationship.  Therefore, they cannot form the basis of the breach of fiduciary duty claims brought on behalf of C.R.W. and S.J.W.

[18] In his brief in opposition, Walsh refers to allegations from the original, not the amended, complaint.  See Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of the lawsuit."); 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 (2d ed. 1990) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . . .").  For example, Walsh alleges that Young withheld grades from C.R.W., brought another student to tears in class, and repeatedly changed due dates of assignments.  (Doc. 66 at 14-15.)  Even if the amended complaint contained all of the allegations from Walsh's brief in opposition, the court's ruling would remain unchanged.

transform them into breaches of a fiduciary duty.[19]   To allow so would discourage all educators from making recommendations regarding their students for fear that a parent's disagreement would subject them to liability.   Therefore, the alleged conduct does not represent a breach of a fiduciary duty.   Accordingly, the court will grant the motion to dismiss these claims—Count V of the amended complaint—and will deny leave to amend as futile.   See Grayson, 293 F.3d at 108.

## E.    Intentional Infliction of Emotional Distress

In order to sustain a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must establish that:  (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant

---

[19] Walsh cites Vicky M. to support these claims on behalf of his sons.  (See Doc. 66 at 16.)  Vicky M., in which the court denied the teacher's motion to dismiss the breach of fiduciary duty claim, is factually distinguishable from the instant case. Unlike the instant matter, Vicky M. involved an autistic support teacher and a student with autism.  486 F. Supp. 2d at 445.  Walsh has repeatedly reminded the court that neither of his sons are special needs students.  In Vicky M., the student alleged that the teacher used aversive techniques, including "(a) striking [the student] on the legs and arms, causing bruising, (b) screaming in [the student's] face, (c) squeezing and crushing [the student's] arms, causing bruising; and (d) stomping on [the student's] insteps."  Id. at 446-47.  The teacher also allegedly used restraints on her students, and attempts by teaching assistants to stop the abusive behavior failed.  Id. at 447-48.  In the instant case, none of the submissions by Walsh, including the amended complaint, allege physical abuse.

emotional distress was severe.[20]  Brufett v. Warner Commc'ns, Inc., 692 F.2d 910,

914 (3d Cir. 1982).  For an IIED claim to survive, the court[21] must be satisfied that

the defendant's alleged misconduct is so extreme and outrageous that it "go[es]

beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and

utterly intolerable in a civilized society."[22]  Wilkes v. State Farm Ins. Cos., No. 1:05-

CV-586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005).

In the matter *sub judice*, Walsh bases the IIED claims on the following

conduct:

> [T]eachers arriving at [Walsh's] residence and then insulting him as
> they departed, Krantz attempting to take C.R.W. from [Walsh] without
> a precipitating event or notifying [Walsh] . . . , Krantz attempting to
> order [Walsh] from work into [Krantz's] office to belittle him,
> interception of protected communications, repeatedly being insulted,
> Krantz repeatedly threatening to have [Walsh] arrested if [Walsh] did
> not go along with his demands, the delivery of heated emails, Krantz
> having defendant Keeney prepare for him some type of parental
> restriction form and then sitting across his office with it held to his

---

[20] The Pennsylvania Supreme Court has yet to formally recognize a cause of
action for IIED.  Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000).
However, the court has indicated that if it were to recognize such a cause of action,
a plaintiff would, at minimum, need to allege the elements set forth above to prevail.
Id.

[21] In Pennsylvania, the element of outrageousness has long been regarded as
an issue of fact initially reserved for the court.  Swisher v. Pitz, 868 A.2d 1228, 1231
(Pa. Super. Ct. 2005).

[22] Conduct that has been deemed sufficiently outrageous to constitute IIED
includes:  (1) killing the plaintiff's son with an automobile and then burying the
body, rather than reporting the incident to the police; (2) intentionally fabricating
documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing
to the press false medical records diagnosing the plaintiff with a fatal disease.  Hoy
v. Angelone, 720 A.2d 745, 754 (Pa. 1998).

> chest as he demanded [Walsh's] concurrence for [the] psychological
> evaluation, Krantz['s] repeated requests to psychologically evaluate
> C.R.W. who has now repeatedly made the honor roll, . . . . Cathcart
> restricting [Walsh] from the Middle School . . . , Young harassing
> C.R.W. for the full academic year, Weinberg and the [School District]
> continually and repeatedly asking to psychoanalyze minor C.R.W.
> despite his stellar performance, and . . . Anderson and Stone
> attempting to restrict S.J.W. from being taught at his grade level . . .
> with no corresponding notes home or failing grades in math, and
> refusing to even discuss this prejudicial and unwarranted
> recommendation.

(Doc. 52 at 12-13.)  The court finds that this conduct and the additional conduct

alleged in Walsh's brief in opposition to the instant motion, see supra note 18, do

not rise to the level of outrageousness required for a claim of IIED.  Accordingly,

the court will grant the motion to dismiss the IIED claims—Count VI of the

amended complaint—and will deny leave to amend as futile.  See Grayson, 293

F.3d at 108.

### F.    Negligent Infliction of Emotional Distress

Walsh asserts an individual claim and claims on behalf of C.R.W. and S.J.W.

for negligent infliction of emotional distress ("NIED") against Krantz, Cathcart,

Weinberg, Heisey, Young, Anderson, Stone, and Keeney.  An NIED claim "will lie in

four circumstances:  (1) where the plaintiff suffered a physical injury and

consequently experiences psychological and emotional pain and suffering;

(2) where the plaintiff observed injury to a close family member and is as a

consequence of the shock emotionally distressed; (3) where the plaintiff nearly

experiences a physical impact in that he was in the zone of danger of the

defendant's tortious conduct; or (4) where a contractual or fiduciary duty exists."[23]
Oehlmann v. Metropolitan Life Ins. Co., No. 3:06-CV-01075, 2007 WL 4563522, at *10
(M.D. Pa. Dec. 21, 2007).  Defendants contend that the amended complaint is
insufficient in that it does not contain the theory under which the NIED claims are
brought.  The court agrees.  However, regardless of this insufficiency, dismissal
without leave to amend is appropriate because the alleged conduct cannot form the
basis of an NIED claim.  All of the conduct alleged in the instant matter[24] is
*intentional* conduct.  (See Doc. 52; see also Doc. 66.)  An NIED claim depends on a
defendant's *negligent* conduct.  See, e.g., DiSalvio, 158 F. Supp. 2d at 561.
Therefore, the NIED claims in the above-captioned action cannot stand.
Accordingly, the court will grant the motion to dismiss the NIED claims—Count VII
of the amended complaint—and will deny leave to amend as futile.  See Grayson,
293 F.3d at 108.

     **G.**     **42 U.S.C. § 1981**

     Section 1981 of Title 42 of the United States Code was enacted to "abolish all
the remaining badges and vestiges of the slavery system."  Mahone v. Waddle, 564
F.2d 1018, 1030 (3d Cir. 1977).  It states, in pertinent part:

---

[23] The court's dismissal of the breach of fiduciary duty claims, see supra Part
III.D, forecloses any NIED claims based on the alleged breaches.

[24] See supra note 18.

> All persons within the jurisdiction of the United States shall have the same
> right in every State and Territory to make and enforce contracts, to sue, to be
> parties, give evidence, and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The statute creates a cause of action against private entities

that engage in discriminatory acts.  No state action is required.  See 42 U.S.C.

§ 1981(c); Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001).  Absent

direct evidence of discrimination, "[c]laims brought pursuant to Section[] 1981 . . .

follow the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973)."  Shipley v. B&F Towing Co., No. Civ.A 04-1530, 2006 WL 1652787, at *2

(D. Del. June 13, 2006); accord Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378,

385 (3d Cir. 1999) (holding that § 1981 cases are analyzed under burden-shifting

McDonnell Douglas framework); Ford v. Veterinary Ctrs. of Am., Inc., No. 00-4604,

2001 WL 1152948, at *3 (E.D. Pa. Sept. 14, 2001).  To establish a prima facie case

under § 1981, a plaintiff must demonstrate "(1) that he belongs to a [protected racial

group]; (2) 'an intent to discriminate on the basis of race by the defendant; and

(3) discrimination concerning one or more of the activities enumerated in' § 1981,

including the right to make and enforce contracts."[25]  <u>Pryor v. Nat'l Coll. Athletic</u>

<u>Ass'n</u>, 288 F.3d 548, 569 (3d Cir. 2002) (quoting <u>Brown</u>, 250 F.3d at 797); <u>see also</u>,

<u>Shipley</u>, 2006 WL 1652787, at *2.

In the matter *sub judice*, the amended complaint is devoid of allegations

sufficient to support a § 1981 claim.  First, the amended complaint does not allege

that Walsh or his sons belong to a protected racial group.  More importantly, it does

not allege that the defendants acted with an intent to discriminate on the basis of

race.  Therefore, dismissal of the § 1981 claims is warranted.  Although in some

circumstances leave to amend might be appropriate, such is not the case in the

instant matter.  In previous filings with the court, Walsh averred that defendants'

actions were based on his and his sons' status as a single-parent family, not on their

race.  (<u>See</u> Doc. 33 at 20.)  Accordingly, the court will grant the motion to dismiss

the § 1981 claims—Count VIII of the amended complaint—and will deny leave to

amend as futile.[26]  <u>See</u> <u>Grayson</u>, 293 F.3d at 108.

---

[25] A plaintiff need not be a member of a racial minority to establish a prima facie case.  Caucasian plaintiffs subjected to reverse discrimination may invoke § 1981 against defendants who engage in differential treatment of the plaintiffs on the basis of race.  <u>See</u> <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 286-87 (1976); <u>Hicks v. ABT Assocs.</u>, 572 F.2d 960, 967 (3d Cir. 1978) ("[S]ection [1981] applies on the same terms to discrimination against . . . whites as it does to discrimination against . . . racial and ethnic minorities."); <u>Wood v. Rendell</u>, No. Civ.A. 94-1489, 1995 WL 676418, at *3 n.7 (E.D. Pa. Nov. 3, 1995).

[26] Walsh contends that the § 1981 claims must survive the motion to dismiss by referring to Title VII of the Civil Rights Act and numerous cases related to harassment in the employment context.  (<u>See</u> Doc. 66 at 20-21.)  Harassment in this context is inapplicable in the instant matter as Walsh and his sons are not employees of defendants.  Therefore, the court need not address these arguments.

**IV.**  **Conclusion**

For the foregoing reasons, the motion to dismiss will be granted in part and denied in part.  An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge



Dated:  August 22, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RORY M. WALSH, individually and | : | CIVIL ACTION NO. 1:07-CV-0616 |
| as Natural Guardian of C.R.W. and, | : | |
| S.J.W., | : | (Judge Conner) |
|              **Plaintiffs** | : | |
|     **v.** | : | |
| | : | |
| DR. ROBERT KRANTZ, SHARI A. | : | |
| YOUNG, SUE A. CATHCART, JUDY | : | |
| KEENEY, KELLY HEISEY, | : | |
| UNKNOWN DALLASTOWN STAFF | : | |
| MEMBER, DR. STEWART | : | |
| WEINBERG, DALLASTOWN AREA | : | |
| SCHOOL DISTRICT, CATHY STONE, | : | |
| and GREG ANDERSON, | : | |
| | : | |
|         **Defendants** | : | |

## ORDER

AND NOW, this 22nd day of August, 2008, upon consideration of defendants'
motion to dismiss (Doc. 61), and for the reasons set forth in the accompanying
memorandum, it is hereby ORDERED that the motion to dismiss (Doc. 61) is
GRANTED in part and DENIED in part as follows:

1. The following claims are DISMISSED:

    a. All claims under 47 U.S.C. § 605 (Count II).

    b. All claims on behalf of C.R.W. pursuant to the Pennsylvania
    Wiretap Act (Count III).

    c. The Pennsylvania Wiretap Act claims (Count III) against
    defendant Dallastown Area School District.

    d. All claims for breach of fiduciary trust (Count V).

    e. All claims for intentional infliction of emotional distress (Count
    VI).

       f.      All claims for negligent infliction of emotional distress (Count VII).

       g.      All claims brought pursuant to 42 U.S.C. § 1981 (Count VIII).

2.      Leave to amend is DENIED as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

3.      The above-captioned action will proceed on the following claims:

       a.      Plaintiff's individual claims and claims on behalf of C.R.W. pursuant to the Federal Wiretapping Act (Count I) against defendants Dr. Robert Krantz, an unknown Dallastown staff member, and the Dallastown Area School District.

       b.      Plaintiff's individual claims pursuant to the Pennsylvania Wiretap Act (Count III) against defendants Dr. Robert Krantz and the unknown Dallastown staff member.

       c.      Plaintiff's individual claims and claims on behalf of C.R.W. under the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count IV) against defendants Dr. Robert Krantz, an unknown Dallastown staff member, and the Dallastown Area School District.

4.      As set forth in the memorandum and order of court dated June 4, 2008 (Doc. 46), the following pretrial schedule shall apply in the instant matter:

       a.      Discovery in the above-captioned matter shall be completed on or before September 16, 2008.

       b.      The parties shall be permitted to file, on or before September 30, 2008, dispositive motions with supporting briefs and statements of material facts.  See FED. R. CIV. P. 56; L.R. 7.5, 56.1.  Failure to file a supporting brief or statement of material facts in accordance with federal and local rules shall result in the motion being deemed withdrawn.

      c.      Plaintiff's expert reports shall be provided to defendants on or before September 30, 2008.[27]

      d.      Defendants' expert reports shall be provided to plaintiff on or before October 31, 2008.  See supra note 27.

      e.      Supplemental/rebuttal expert reports shall be provided to the opposing parties on or before November 14, 2008.  See supra note 27.

5.      Upon resolution of any dispositive motions, the court shall issue a revised pretrial and trial schedule if necessary.


                                       S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

---

[27] The parties shall *not* separately file expert reports with the court.  An expert report shall only be filed with the court in conjunction with a dispositive motion that refers to the report.  But see Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989) ("The substance of this report was not sworn to by the alleged expert. Therefore, the [expert] report is not competent to be considered on a motion for summary judgment."); see also FED. R. CIV. P. 56(e).