**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RORY M. WALSH, individually and** | : | **CIVIL ACTION NO. 1:07-CV-0616** |
| **as Natural Guardian of C.R.W.,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **DR. ROBERT KRANTZ, UNKNOWN** | : | |
| **DALLASTOWN STAFF** | : | |
| **MEMBER, and DALLASTOWN AREA** | : | |
| **SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is a motion (Doc. 106) to recuse filed by *pro se* plaintiff Rory M. Walsh ("Walsh"). Walsh contends that the court demonstrated a personal bias by (1) unduly inhibiting his right to pretrial discovery, (2) improperly restricting his right to present expert reports, (3) displaying animosity toward him during a telephone conference, (4) attempting to intrude upon the attorney-client privilege, and (5) improperly delaying disposition of a motion to file a second amended complaint. For the reasons that follow, the motion to recuse will be denied.

## I.   Factual Background Relevant to the Motion to Recuse[1]

The civil complaint in this case was filed in April 2007, alleging claims under 42 U.S.C. § 1983 and § 1985, the Privacy Act, 5 U.S.C. § 552, and eavesdropping

---

[1] A detailed recitation of the facts underlying Walsh's complaint is set forth in the court's memoranda of June 4, 2008 (Doc. 46) and August 22, 2008 (Doc. 72), familiarity with which is presumed.

claims arising under state and federal law.  (See Doc. 1.)  Walsh named ten different

parties as defendants in the complaint, and the defendants subsequently filed two

separate motions to dismiss.  (See Docs. 3, 11.)  A standard case management order

was issued on June 4, 2007, which set jury selection and trial for April 2008.  (Doc.

17.)  On June 13, 2007, the court stayed discovery pending disposition of the motions

to dismiss.  (Doc. 27.)  By February 2008, the court had yet to issue a ruling on

defendants' motions to dismiss; therefore, the court stayed the trial schedule

pending such a ruling.  (See Doc. 45.)  On June 4, 2008, the court issued a

memorandum and order granting defendants' motions to dismiss in part and

denying the motions in part.  (Doc. 46.)

The court then held a telephone conference with the parties on June 10, 2008.

(See Doc. 47.)  During this conference, the court discussed the potential content of

Walsh's amended complaint and extended the deadline within which Walsh was to

file his amended pleading.  (Id.)  According to Walsh, the court began "shouting" at

him during this conference.  (See Doc. 107 ¶ 7, at 9.)  On June 25, 2008, Walsh filed

an amended complaint, which added new allegations unrelated to the claims

previously stated.  (See Doc. 52.)  The court stayed discovery related to Walsh's new

claims, but allowed discovery to move forward with respect to the cognizable claims

alleged in Walsh's original complaint.  (See Doc. 53.)

On July 1, 2008, Walsh filed an *ex parte* motion seeking limited immunity for

himself, as well as for "families of the Dallastown community . . . that must be

interviewed in order to document the defendants [sic] abuse."  (Doc. 56 ¶¶ 5-6.)

2

Walsh averred that the Pennsylvania Department of Education had warned him
that it was a misdemeanor to publicly disclose facts concerning "educator
misconduct." (See id. ¶ 4.) Ostensibly afraid that his interviews with parents in the
community would fall into this category of misdemeanor, Walsh requested court-
sanctioned immunity. On July 3, 2008, the court denied Walsh's request, indicating
that the statutes under which he feared prosecution were not applicable to his
proposed course of conduct.[2] (See Doc. 58.)

Defendants filed a motion to dismiss the amended complaint on July 15, 2008.
(Doc. 61.) This motion was fully briefed by August 8, 2008, and on August 22, 2008,
the court issued a memorandum and order granting defendants' motion in part and
denying the motion in part. (Doc. 72.) The court's order also instructed the parties
regarding the trial schedule going forward, indicating that Walsh's expert reports
were to be provided to defendants by September 30, 2008. (See id.) Neither party
objected to the court's order regarding the discovery schedule.

Walsh filed a motion for leave to filed a second amended complaint on
September 8, 2008. (Doc. 89.) That motion is fully briefed and ripe for disposition.
Walsh then retained the services of an attorney, Jonathan Crisp ("Attorney Crisp"),
who entered an appearance with the court on September 21, 2008. (Doc. 93.) On

---

[2] In the instant motion to recuse, Walsh contends that the denial of his
request for immunity represents an example of the court's prejudicial restriction of
his right to discovery. (See Doc. 107 ¶ 4, at 5-6.) It is not clear from Walsh's motion
how the court restricted discovery by denying him immunity, but the apparent
implication is that Walsh was dissuaded from conducting some interviews for fear
of reprisal by the Pennsylvania Department of Education.

October 20, 2008, Walsh petitioned the court to terminate Attorney Crisp as his attorney.  (Doc. 94.)  The court ordered Attorney Crisp to file a response to Walsh's request.  (Doc. 96.)  Attorney Crisp filed a response on October 26, 2008, explaining that his "professional judgment did not allow him to pursue the case in the manner and fashion [Walsh] desired."  (Doc. 97 ¶ 2.)  The court then granted Walsh's motion to terminate Attorney Crisp as counsel.  (Doc. 98.)

On November 21, 2008, Walsh filed the instant motion, which seeks recusal pursuant to 28 U.S.C. § 455.  (See Doc. 106 at 1.)  Attached to his brief in support of the motion, Walsh appended an affidavit as required by 28 U.S.C. § 144.  (Doc. 107, Ex. A.)  Walsh contends that the court exhibited a bias warranting recusal by prejudicially restricting his right to discovery; by restricting his ability to submit expert reports to the court; by displaying open animosity toward Walsh during the June 10, 2008 telephone conference; by requiring Attorney Crisp to file a written response regarding Walsh's motion to terminate him as counsel; and by failing to rule on Walsh's motion to file a second amended complaint, which has been ripe since September 12, 2008.

## II.  **Discussion**

The United States Code provides litigants two avenues by which to seek the recusal of a presiding judge.  The first such judicial disqualification standard is set forth in 28 U.S.C. § 455, which  provides in pertinent part as follows:

> (a)    Any justice, judge, or magistrate judge of the
>        United States shall disqualify himself in any
>        proceeding in which his impartiality might
>        reasonably be questioned.
> (b)    He shall also disqualify himself in the following
>        circumstances:
>        (1)    Where he has a personal bias or prejudice
>               concerning a party . . . .

Id.  Pursuant to the above quoted language, the court must consider whether its

rulings and statements objectively produce the appearance of bias against Walsh.[3]

The Supreme Court has explained that these provisions "require . . . 'bias and

prejudice' . . . to be evaluated on an objective basis, so that what matters is not the

reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S.

540, 548 (1994).  This objective standard mandates recusal when a "reasonable man

knowing all the circumstances would harbor doubts concerning the judge's

impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir. 1987) (citing United

States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983); see also In re Antar, 71 F.3d 97,

101 (3d Cir. 1995).  If the record presents a close question, the court must resolve the

issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995).

The second statutory standard guiding judicial disqualification is set forth in

28 U.S.C. § 144.  This section provides that

------

[3] Generally speaking, subsections 455 (a) and (b)(1) should be construed
together when the ground for recusal is the bias or partiality of the trial judge.  See
United States v. Bertoli, 40 F.3d 1384, 1412 (3d Cir. 1994); United States v. Winston,
613 F.2d 221, 223 (9th Cir. 1980) (citing United States v. Olander, 584 F.2d 876, 882
(9th Cir. 1978)).

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Id. The mere filing of a recusal affidavit, however, "does not automatically disqualify a judge." United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir. 1973); see also Conklin v. Warrington Twp., 476 F. Supp. 2d 458, 462 n.10 (M.D. Pa. 2007). Rather, the district judge against whom the affidavit is filed must determine, as a threshold matter, whether the affidavit is legally sufficient for purposes of § 144.

An affidavit is legally sufficient if the facts alleged therein (1) are material and stated with particularity, (2) would convince a reasonable person that a bias exists, and (3) evince bias that is personal, as opposed to judicial, in nature. United States v. Thompson, 483 F.2d 527, 528 (3d Cir. 1973); see also United States v. Rosenberg, 806 F.2d 1169, 1173 (3d Cir. 1986). The affiant must aver specific facts, including the time, place, and circumstances that illustrate the alleged personal bias. Townsend, 478 F.2d at 1074. To the extent that a party complies with this requirement, the court must assume the truth of the factual averments, even if it knows them to be false. United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993); United States v. Vespe, 868 F.2d 1328, 1340 (3d Cir. 1989). Mere conclusory statements and opinions, however, need not be credited. Vespe, 868 F.2d at 1340; Cooney v. Booth, 262 F. Supp. 2d 494, 500 (E.D. Pa. 2003). Furthermore, because of its inherent potential for abuse, § 144 affidavits are to be strictly construed against the party seeking

6

disqualification.  See, e.g., Sykes, 7 F.3d at 1339; Smith v. Danyo, 441 F. Supp. 171,

175 (M.D. Pa. 1977), aff'd, 585 F.2d 83 (3d Cir. 1978); Bumpus v. Uniroyal Tire Co.,

385 F. Supp. 711, 713 (E.D. Pa. 1974).

Courts should construe the substantive standards governing recusal for

personal bias under §§ 144 and 455 in pari materia.[4]  See Grand Entm't Group, Ltd.

v. Arazy, 676 F. Supp. 616, 619 (E.D. Pa. 1987); Pardini v. Allegheny Intermediate

Unit, 2006 U.S. Dist. LEXIS 1325, at *14 (W.D. Pa. Jan. 17, 2006); see also Apple v.

Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987); United States v. Story,

716 F.2d 1088, 1091 (6th Cir. 1983); Johnson v. Trueblood, 629 F.2d 287, 290-91 (3d

Cir. 1980).  "Personal bias," as that term is used in these statutes, denotes a bias

that is extrajudicial in nature.  Johnson v. Carroll, 369 F.3d 253, 261 (3d Cir. 2004);

Vespe, 868 F.2d at 1340.  Bias in favor of a "particular legal principle," or bias based

on the court's adverse legal rulings—often referred to collectively as "judicial

bias"—are insufficient grounds for recusal.  Thompson, 483 F.2d at 529; see also

United States v. Grinnell Corp., 384 U.S. 563, 583 (1966) ("The alleged bias and

prejudice to be disqualifying must stem from an extrajudicial source and result in

---

[4] The statutory language of § 455 is broader than that found in § 144, providing additional grounds for recusal aside from a judge's alleged personal bias. See § 455(b)(2)-(5).  When a party seeks disqualification for any reason other than personal bias, the substantive analysis under § 455 may diverge from that required under § 144.  In the instant matter, Walsh has not alleged any grounds for recusal aside from those relating to the court's alleged personal bias or prejudice.  Thus, the substantive analysis under §§ 144 and 455 is the same.

an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." <u>Securacomm Consulting, Inc. v. Securacom, Inc.</u>, 224 F.3d 273, 278 (3d Cir. 2000) (citing <u>In re TMI Litig.</u>, 193 F.3d 613, 728 (3d Cir. 1999) and <u>Jones v. Pittsburgh Nat'l Corp.</u>, 899 F.2d 1350, 1356 (3d Cir. 1990)).  Additionally, the Supreme Court has explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." <u>Liteky</u>, 510 U.S. at 555.  Rather, "opinions formed by the judge on the basis of facts introduced or events occurring during current or prior proceedings are not grounds for a recusal motion unless they display a [significant] degree of favoritism or antagonism." <u>Carroll</u>, 369 F.3d at 261.

When assessing a litigant's recusal motion, the court must carefully consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings.  <u>In re Antar</u>, 71 F.3d at 101; <u>Alexander v. Primerica Holdings, Inc.</u>, 10 F.3d 155, 162 (3d Cir. 1993); <u>Conklin</u>, 476 F. Supp. 2d at 463.  A litigant is not permitted to use the federal disqualification statutes as a means of judge-shopping.  Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." <u>Brice v. Episcopal Church in the Diocese of Colorado</u>, 289 F.3d 648, 659 (10th Cir. 2002) (quoting <u>Nichols</u>, 71 F.3d at 351); <u>Cooney</u>, 262 F. Supp. 2d at 508; <u>see also</u>

<u>United States v. Snyder</u>, 235 F.3d 42, 46 n.1 (1st Cir. 2000); <u>Curley v. St. John's University</u>, 7 F. Supp. 2d 359, 362 (S.D.N.Y. 1998).

Finally, a party's grounds for disqualification must be raised in a timely fashion.  Section 144 expressly includes a time limitation, which requires a party to seek recusal with reasonable diligence.  <u>See</u> § 144; <u>Cooney</u>, 262 F. Supp. 2d at 503-04 (stating that "a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim"); <u>United States v. Enigwe</u>, 155 F. Supp. 2d 365, 369 (E.D. Pa. 2001) (stating that § 144 "requires that an affidavit for recusal be filed timely"); <u>Danyo</u>, 441 F. Supp. at 175 (requiring an affidavit for recusal to "be filed timely").  Section 455 does not contain such an explicit requirement, but courts generally assess the timeliness of a litigant's motion under this provision as well.[5]  <u>See</u> <u>In re Kensington Int'l, Ltd.</u>, 368 F.3d 289, 312 (3d Cir. 2004); <u>see also</u> <u>In re IBM Corp.</u>, 45 F.3d 641, 643 (2d Cir. 1995); <u>In re Apex Oil Co.</u>, 981 F.2d 302, 304 (8th Cir. 1992).  By requiring a litigant to act with reasonable diligence, the judicial disqualification statutes prevent a party "with knowledge of circumstances suggesting possible bias or prejudice [from] holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when [those rulings] are not forthcoming."  <u>Smith v. Danyo</u>, 585 F.2d 83, 86 (3d Cir. 1978).

---

[5] In the context of the court's § 455 analysis, there is no strict timeliness requirement.  Rather, the timeliness of the movant's request for disqualification is but one of many factors for the court to weigh in its decision making.  <u>See</u> <u>In re Kensington Int'l, Ltd.</u>, 368 F.3d 289, 312 (3d Cir. 2004).

In the motion *sub judice*, Walsh raises five grounds that he contends are illustrative of the court's personal bias.[6]  Walsh argues that (1) the court unduly restricted his right to discovery, (2) that the court improperly restricted his right to present expert reports, (3) that the court displayed open animosity toward him during a telephone conference on June 10, 2008, (4) that the court improperly attempted to intrude upon the attorney-client privilege between Walsh and his former counsel, Attorney Crisp, and (5) that the court has unduly delayed ruling upon the motion to amend his complaint.  Walsh claims that the above-described grounds entitle him to recusal under both § 455 and § 144.  The court will address each of these contentions *seriatim*.

## A.    Walsh's Right to Discovery

Walsh contends that the court has improperly restricted his right to discovery in an attempt to protect the defendants and to "preclude[] th[e] Court from having to rule on *de facto* admissions."  (Doc. 107 ¶ 4, at 5-6.)  In his § 144 affidavit, Walsh claims that the court was "excessively restrictive of [Walsh] in discovery."  (Id., Ex. A ¶ 1, at 2.)  With respect to this latter claim, Walsh's affidavit is factually insufficient for § 144 purposes.  See Townsend, 478 F.2d at 1074 (requiring

---

[6] In his § 144 affidavit, Walsh also describes the court's allegedly prejudicial behavior in a separate matter, Walsh v. United States, No. 05-CV-0818.  Summary judgment was granted in favor of the defendants in this matter on June 10, 2008.  (See Doc. 298, 05-0818.)  Walsh subsequently appealed the court's decision to the Third Circuit, where the matter is pending.  (See Doc. 300, 05-0818.)  Clearly, Walsh's remedy lies in the pending appeal and the court will not permit him to bootstrap these allegations as a colorable basis for recusal in the case *sub judice*.

a § 144 affidavit to allege specific facts, including the time, place, and circumstances that illustrate a judge's bias in order to satisfy the sufficiency standard). Therefore, it is unnecessary for the court to accept as true the discovery allegation contained in Walsh's affidavit. See Vespe, 868 F.2d at 1340; see also 13A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3550, at 629 (2d ed. 1984).

As a threshold matter, Walsh's contentions regarding the court's alleged imposition on his right to discovery are untimely. Walsh identifies four specific orders purportedly evidencing the court's bias.[7] (Doc. 107 ¶ 4, at 5.) Those orders were issued by the court between June 13, 2007, and July 3, 2008. The instant petition was filed on November 21, 2008. Therefore, almost five months have elapsed from the issuance of the most recent allegedly biased discovery order and Walsh's motion to recuse. Under no interpretation of the judicial disqualification statutes can this be considered "timely." See, e.g., Danyo, 441 F. Supp. at 175 (finding a three-month time lapse between the allegedly biased ruling and the movant's motion for disqualification to be untimely).

Even if Walsh's claims were timely, the discovery orders in question provide no basis for disqualification. First, the orders do not constitute extrajudicial decisions. See Grinnell Corp., 384 U.S. at 583 (requiring the alleged bias to stem from an "extrajudicial source"); Carroll, 369 F.3d at 261 (same). Rather, the orders reflect prudent case management of a pending matter. When Walsh initially filed

---

[7] The orders in question appear at docket entries 27, 45, 53, and 58.

his complaint, he named ten different defendants as parties, most of whom have now been dismissed from the action.  To avoid potentially unnecessary and expensive discovery—especially when resolution of the motions could dispose of the case in its entirety—the court temporarily stayed discovery pending the disposition of defendants' motions.  (See Docs. 27, 45.)  Walsh was never denied the opportunity to conduct appropriate discovery on his cognizable claims.  In fact, once the court ruled on defendants' motions to dismiss in June 2008, discovery in the matter resumed.  (See Doc. 53.)

Walsh also contends that the court improperly restricted his right to discovery by denying him limited immunity to conduct interviews with families of the Dallastown community.  (See Doc. 58.)  Again, this concern focuses on the court's rulings and does not implicate extrajudicial conduct.  Walsh presents only conclusory allegations and unfounded speculation accusing the court of attempting to protect defendants.  Such contentions are insufficient as a matter of law to warrant disqualification.  See Liteky, 510 U.S. at 555; Vespe, 868 F.2d at 1340.

### B.   Walsh's Right to Present Expert Reports

Walsh alleges that the court demonstrated personal bias by requiring him to serve his expert reports upon the defendant, but disallowing him to file those reports with the court.  (See Doc. 107 ¶ 5, at 6.)  In a case management order dated August 22, 2008, the court set a dispositive motion deadline of September 30, 2008, and required Walsh to transmit his expert reports to the defendants by the same date.  (Doc. 72 ¶ 4.)  According to Walsh, this order "stripped [him] of another

12

tactic," removing "hard to impeach" evidence from the court's dispositive motion review.  (Doc. 107 ¶ 5.)  In his § 144 affidavit, Walsh further avers that the court's order has resulted in prejudice, "because each expert bolsters his claims, as well as being prepared to give expert testimony, hence this Court will rule on the action at the dispositive phase without [the reports]."[8]  (Id., Ex. A ¶ 4, at 3.)

The court issued the allegedly biased order on August 22, 2008.  (Doc. 72.)  Walsh waited three months before moving to disqualify the court based upon this ruling.  As he waited, Walsh sought favorable court rulings on several new motions, including a motion for partial reconsideration of the court's order dismissing several of Walsh's claims, (see Doc. 80), and a motion to file a second amended complaint, (Doc. 89).[9]  Walsh's failure to seek disqualification, while he continued to petition the court for propitious action on his case, demonstrates a failure to exercise the reasonable diligence required by the law.  The purpose of the reasonable diligence element is to prevent a party "with knowledge of circumstances suggesting possible bias or prejudice [from] holding back, while calling upon the court for hopefully favorable rulings," and subsequently moving to recuse when favorable review is not forthcoming.  See Danyo, 585 F.2d at 86.  Walsh

---

[8] The contention contained in Walsh's § 144 affidavit is a legal conclusion and, as such, the court need not credit the conclusory statement.  Vespe, 868 F.2d at 1340.

[9] According to the docket, Walsh filed a total of six motions (requesting favorable court action) between August 22, 2008, and November 21, 2008.  (See Docs. 73, 78, 80, 89, 94, 101.)

13

neglected to act with reasonable diligence; thus, his motion to disqualify based upon the court's August 22, 2008 directive regarding expert reports is untimely.

Even if Walsh's motion were timely, however, it is legally insufficient to sustain a motion to disqualify.  The order does not implicate extrajudicial conduct.  See Grinnell Corp., 384 U.S. at 583 (requiring the alleged bias to stem from an "extrajudicial source"); Carroll, 369 F.3d at 261 (same).  In setting this case management schedule, the court was merely implementing Federal Rule of Civil Procedure 5(d)(1), which states that "disclosures under Rule 26(a)(1) or (2) . . . must not be filed until they are used in the proceeding or the court orders filing."[10]  FED. R. CIV. P. 5(d)(1).  Walsh was not prohibited from presenting his expert reports to the court at the proper time; he was simply instructed to refrain from doing so until that time arose.[11]  Thus, Walsh was not "stripped" of any tactics, but was directed to follow the same procedural rules that all litigants, including the defendants in this action, are required to follow.  (See Doc. 72 ¶ 4 (instructing defendants to submit expert reports to Walsh)).  A reasonable person would not conclude that a personal bias exists based upon the above-described conduct.

---

[10] Expert reports are disclosures under Rule 26(a)(2).  See FED. R. CIV. P. 26(a)(2).

[11] Walsh contends that the court's ruling prevented him from utilizing his expert reports at the dispositive motion stage of the litigation.  (See Doc. 107, Ex. A ¶ 4, at 2-3.)  This assertion is erroneous.  The court never prohibited Walsh from appending the reports as exhibits to his dispositive motions, which is a manner of presentation envisioned by the Federal Rules.  See FED. R. CIV. P. 5(d)(1) (proscribing the filing of disclosures "until they are used in the proceeding").

C.    <u>The Court's Alleged Hostility on June 10, 2008</u>

Walsh contends that during a telephone conference on June 10, 2008, the court displayed "open animosity" by "shouting" at him.  (Doc. 107 ¶ 7, at 8-9.) Walsh repeats these allegations with the requisite specificity in his § 144 affidavit, requiring the court to accept this allegation as true.  (<u>See</u> <u>id.</u>, Ex. A ¶ 2, at 2.)  The docket reflects that a telephone conference occurred on the date averred by Walsh, (<u>see</u> Doc. 47), and subsequent to that conference, the court granted Walsh's request to file an amended complaint, (<u>see</u> Doc. 48).

Once again, Walsh's motion is untimely.  The incident of which he complains occurred over five months before Walsh filed the instant disqualification motion. Between June 10, 2008, and November 21, 2008, Walsh filed an array of motions seeking favorable court review.  <u>See</u> <u>supra</u> Part II.B.  During this period of time, there was nothing preventing him from moving for the relief that he now seeks, yet he neglected to pursue disqualification.  Under the circumstances, Walsh has failed to exercise reasonable diligence required by federal recusal statutes, necessitating a dismissal of his motion as untimely.  <u>See</u> <u>Danyo</u>, 585 F.2d at 86.

Even if his motion to recuse were timely, however, Walsh's contentions are legally insufficient to sustain a motion to disqualify.  Again, the conduct in question did not arise from an extrajudicial source, but occurred during the court's participation in the ongoing case management.  <u>See</u> <u>Grinnell Corp.</u>, 384 U.S. at 583 (requiring the alleged bias to stem from an "extrajudicial source"); <u>Carroll</u>, 369 F.3d at 261 (same).  Furthermore, Walsh fails to elaborate on the content of the court's

15

purported "shouting."  Raised voices, without more, does not mandate judicial

disqualification.

### D.    Alleged Intrusion Upon Walsh's Attorney-Client Privilege

Walsh contends that the court improperly attempted to "pierce [the]

attorney-client privilege" when Walsh moved to terminate his representation by

Attorney Crisp.  (Doc. 107, Ex. A ¶ 3, at 2.)  On October 20, 2008, Walsh filed a

motion seeking to remove Attorney Crisp from the instant matter.  (Doc. 94.)  Walsh

also submitted a brief in support of this motion, in which he averred that Attorney

Crisp "had already begun discussions with the opposition to withdraw," and that if

he were not removed, Attorney Crisp "would not be giving [Walsh's cause of action]

his best effort."  (Doc. 95 at 2-3.)  The court issued an order on October 24, 2008,

allowing Attorney Crisp to file a response to Walsh's averments on the record.

(Doc. 96.)  Attorney Crisp filed such a response on October 26, 2008, in which he

indicated that he had "tactical disagreements" with Walsh that would prevent his

continued representation.  (Doc. 97.)  The court terminated Attorney Crisp's

representation on November 3, 2008.  (Doc. 98.)

The crux of Walsh's allegation is that the court was attempting to breach the

attorney-client relationship by requiring Attorney Crisp to submit a response to

Walsh's motion to terminate.  (See Doc. 107 ¶ 6, at 6-8.)  Walsh contends that in an

unrelated matter before the court, he moved to terminate his counsel and the court

obliged his request without requiring a similar response on the record.[12]  (See id.; see also Ex. A ¶ 3, at 2.)  By requiring Attorney Crisp to respond in this case, Walsh argues that the court revealed its personal bias against him.

Although this specific allegation is timely, it is nonetheless legally insufficient to support judicial disqualification.  The incident does not concern extrajudicial conduct.  See Grinnell Corp., 384 U.S. at 583 (requiring the alleged bias to stem from an "extrajudicial source"); Carroll, 369 F.3d at 261 (same).  Furthermore, in his motion to terminate, Walsh claimed that Attorney Crisp had "begun discussions with the opposition to withdraw."  (Doc. 95 at 2.)  By allowing Attorney Crisp to file a response, the court was simply affording him an opportunity to confirm and/or to clarify the record.  Attorney Crisp was not subjected to questioning, he was not called to testify, and he was not required to divulge any privileged information.  In fact, Attorney Crisp's response confirmed for the record that "tactical disagreements" with Walsh had indeed arisen.  (See Doc. 97 at 2.)  A reasonable person would not conclude that a personal bias exists based upon the court's attempt to maintain a clear record in this matter.

---

[12] Walsh makes several claims concerning his representation by Sara Austin ("Attorney Austin") in a previous matter before the court, Walsh v. United States, No. 05-CV-0818.  Many of these claims are irrelevant to the instant motion to disqualify because they allege that the court's decision-making in the prior matter was motivated by an attempt to protect Attorney Austin.  (See Doc. 107 ¶ 6, at 6-8.)  Assuming arguendo that Walsh's claims are accurate, Attorney Austin has never represented Walsh in the instant case.  At most, Walsh's allegations suggest a bias in favor of his counsel in the prior matter, an assertion that has no bearing on the issue of disqualification in this case.

### E.    The Court's Ruling on Walsh's Motion to Amend

Walsh's final ground for disqualification contends that the court has improperly delayed ruling on his motion to file a second amended complaint.  (See Doc. 107 ¶ 8, at 9.)  On September 8, 2008, Walsh sought permission from the court to file a second amended complaint in order to add certain Fourteenth Amendment violations to his cause of action.  (See Doc. 89.)  Defendants opposed Walsh's request, (see Doc. 91).  The court has yet to take action on Walsh's motion, which is now ripe for disposition.  According to Walsh, the court's inaction demonstrates that it has "pre-judg[ed] this action."  (Doc. 107 ¶ 8, at 9.)

Less than ninety days have elapsed since Walsh's motion became ripe.  This fact, standing alone, constitutes insufficient grounds for judicial disqualification.  First, the "delay" is not extrajudicial in nature.  See Grinnell Corp., 384 U.S. at 583 (requiring the alleged bias to stem from an "extrajudicial source"); Carroll, 369 F.3d at 261 (same).  Second, the record is devoid of evidence of willful delay.  An impatient litigant is not permitted to employ the federal disqualification statutes simply as a means of expediting resolution of a pending motion.  See In re Antar, 71 F.3d at 101; Primerica Holdings, 10 F.3d at 162.  A slight delay in the disposition of a plaintiff's third motion to amend does not demonstrate personal bias.

### III.    Conclusion

For the foregoing reasons, Walsh's motion to recuse is denied.  Although it is apparent from his motion that Walsh is dissatisfied with some of the court's rulings in this matter, such displeasure is an improper basis upon which to disqualify a

sitting judge.  In the absence of a legitimate reason justifying recusal, the court

bears a strong duty to preside over this matter.  <u>See</u> <u>Brice</u>, 289 F.3d at 659; <u>Cooney</u>,

262 F. Supp. 2d at 508; <u>Conklin</u>, 476 F. Supp. 2d at 463.  This court will continue to

exercise that duty in Walsh's case.

       An appropriate order will issue.


    <u> S/ Christopher C. Conner   </u>
    CHRISTOPHER C. CONNER
    United States District Judge


Date:       December 8, 2008

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RORY M. WALSH, individually and as Natural Guardian of C.R.W.,** | : | **CIVIL ACTION NO. 1:07-CV-0616** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | |
| **DR. ROBERT KRANTZ, UNKNOWN DALLASTOWN STAFF MEMBER, and DALLASTOWN AREA SCHOOL DISTRICT,** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 8th day of December, 2008, upon consideration of plaintiff's motion to recuse (Doc. 106), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to recuse is DENIED.

   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge