UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| RORY M. WALSH, individually and as Natural Guardian of C.R.W., | : : : | **CIVIL NO. 1:07-CV-0616** |
| | : | (Judge Conner) |
| Plaintiff | : : | (Magistrate Judge Smyser) |
| v. | : : | |
| DR. ROBERT KRANTZ, et al., | : : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION


I. Background and Procedural History.


The plaintiff commenced this action by filing a

complaint on April 2, 2007.  On June 25, 2008, the plaintiff

filed an amended complaint, and on July 1, 2008, the plaintiff

filed a supplement to his amended complaint in which he

specified which defendants are implicated by each claim.


The remaining claims in this case relate to a telephone

call the plaintiff made on March 29, 2006 to his son, C.R.W.,

at the Dallastown Area Middle School.  The plaintiff claims

that defendant Dr. Robert Krantz, the then principal of the Dallastown Area Middle School, with the assistance of an unknown Dallastown staff member and without authorization or a warrant, eavesdropped on the telephone conversation between the plaintiff and his son.

The remaining claims in this case are: 1) plaintiff's individual claims and claims on behalf of C.R.W pursuant to the Federal Wiretapping Act against defendants Krantz, an unknown Dallastown staff member and the Dallastown Area School District; 2) plaintiff's individual claims pursuant to the Pennsylvania Wiretap Act against defendants Krantz and an unknown Dallastown staff member; and 3) the plaintiff's individual claims and claims on behalf of C.R.W. under the Fourth Amendment pursuant to 42 U.S.C. § 1983 against defendants Krantz, an unknown Dallastown staff member and the Dallastown Area School District. *See Doc. 72* at 27.

Defendants Krantz and the Dallastown Area School District have filed an answer to the amended complaint. *See Doc. 62.*[1]

The discovery period closed on March 16, 2009. *See Doc.* 103. The deadline for filing dispositive motions was April 1, 2009. *Id.* Currently pending is a motion for summary judgment filed by defendants Krantz and Dallastown Area School District and a motion for summary judgment filed by the plaintiff.

II. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

---

1. On February 28, 2009, the plaintiff moved to replace the unknown Dallastown staff member with Judy Keeney. By an Order dated March 16, 2009, that motion was denied on that basis that an amendment to name Judy Keeney as the unknown Dallastown staff member would be futile in that the plaintiff did not state an adequate factual basis for the assertion that Keeney participated in an act of eavesdropping to withstand a motion for summary judgment. *See Doc. 176.*

that the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c). The moving party bears the initial
responsibility of informing the court of the basis for its
motion and identifying those portions of the record which
demonstrate the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With
respect to an issue on which the nonmoving party bears the
burden of proof, the moving party may discharge that burden by
"'showing'-- that is, pointing out to the district court --
that there is an absence of evidence to support the nonmoving
party's case." *Id.* at 325. Once the moving party has met its
burden, the nonmoving party may not rest upon the mere
allegations or denials of its pleading; rather, the nonmoving
party must "set out specific facts showing a genuine issue for
trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual
issue that will affect the outcome of the trial under governing
law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
"Only disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the

matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.  Defendants' Motion for Summary Judgment.


        Defendants Krantz and the Dallastown Area School
District contend that the plaintiff has failed to establish a
violation of the Federal Wiretapping Act.  Defendant Krantz
contends that he is entitled to immunity from the Pennsylvania
Wiretap Act claim under the Pennsylvania Political Subdivision
Tort Claims Act or, in the alternative, that the plaintiff has
failed to establish a violation of the Pennsylvania Wiretap
Act.  Defendants Krantz and the Dallastown Area School District
contend that the plaintiff has failed to establish a violation
of the Fourth Amendment.


        After setting forth the material facts which are not in
dispute, we will discuss the plaintiff's claims under the
Federal Wiretapping Act, then the plaintiff's claims under the
Pennsylvania Wiretap Act and, finally, the plaintiff's Fourth
Amendment claims.

A. Undisputed Facts.

Plaintiff Rory M. Walsh is the father of minor C.R.W.
*Doc. 182-17* at ¶1 and *Doc. 191* at ¶1.  During the 2005-2006
school year, C.R.W. attended 7th Grade in the Dallastown Area
Middle School. *Id.* at ¶2.  Defendant Krantz was the principal
of the Dallastown Area Middle School while C.R.W. attended 7th
Grade. *Id.* at ¶3.

On March 29, 2006, the plaintiff placed two separate
telephone calls to the Dallastown Area Middle School to speak
with C.R.W. *Id.* at ¶4.  The plaintiff created a telephone log
of the two telephone calls he placed to the Middle School on
March 29, 2006. *Id.* at ¶5.

During the first telephone call, the plaintiff did not
speak to C.R.W. *Plaintiff's Dep.* at 26 *(Doc. 182-2* at 10).
Rather, the plaintiff spoke to defendant Krantz. *Id.*  Defendant
Krantz told the plaintiff that he would relay a message from
the plaintiff to C.R.W. *Id.*

The plaintiff had the opportunity to speak to C.R.W.

when he placed the second call. *Id.* at ¶6.  The plaintiff

believes the second call was placed between 8:00 a.m. and 10:00

a.m. *Id.* at ¶7.


Defendant Krantz sent the plaintiff an email on March

29, 2006 at 1:06 p.m. which reads as follows:

> Mr. Walsh,
> Chris informed me that you had asked him to
> give his outline (or finish) to Mr. Hartman and
> complete some extra credit.
> He was pulled from math class to talk with you.
> I would prefer not to call him between classes
> or during class for phone calls and allow him
> to focus on subject work.  I had previously
> talked with Chris about the Assignment.  Just
> let us know to remind him and give him
> positives about Assignments.  We need to work
> together utilizing the best possible practices
> and I believe that the emailing and assignment
> book, along with counselor, teacher, and
> principal reminders will bring about positive
> results.
> Bob

*Id.* at ¶11 and *Doc. 191-2* at 8.


The plaintiff responded to defendant Krantz's email at

1:19 p.m. on March 29, 2006 as follows:

Dr. Krantz,

There is a reason I call, if ever, to ask that
he be pulled out of class.  This is the second
time you have blocked access to my son.  I have
asked to discuss Ms. Young's changing her due
dates and the abuse she delivers in class and
you have refused.  She continues to be a
problem, with her changing due dates and terse,
totally unwarranted emails.  I am shocked that
you continue to tolerate her antics, but you
will be hearing about this shortly.

I will keep my calls to a minimum, but I ask
you and your staff to stop blocking me, and
when they transfer me to you, they should tell
me so.  This is a sophomoric stunt, and I want
it to stop.

We should all work together for his benefit,
and I have asked Ms. Young to consider the
extra-credit book report he did for the third
period.

When there is an urgent matter, and I need to
talk to him, he is doing well in all subjects
but one, but I will keep my calls to a minimum
and you and your staff will cease from blocking
my access to my son.  This is reasonable for
all.

Capt Rory M. Walsh

*Doc. 182-17* at ¶12 and *Doc. 191* at ¶12.   Defendant Krantz

responded at 2:11 p.m. with an email that reads:

It is never my intent to block your access to
your son, but I must keep instructional time as
a priority for the sake of your son and our
responsibility from a parent and principal

10

> standpoint.  I have continued to monitor the
> team's approach with students.  It is important
> that we continue a positive working
> relationship to keep Chris on track, but also
> make him responsible.
>
> Bob

*Doc. 191-2* at 14.  The plaintiff responded at 2:15 p.m. on

March 29, 2006:

> I am with you on this and will continue to work
> with you.  I will keep my calls to him to a
> minimum.
> Sincerely, Rory

*Id.*

### B. Federal Wiretapping Act.

Defendants Krantz and the Dallastown Area School

District contend that the plaintiff has failed to establish a

violation of the Federal Wiretapping Act.

Except as otherwise specifically provided in the

Federal Wiretapping Act (Act), any person who "intentionally

intercepts, endeavors to intercept, or procures any other

person to intercept or endeavor to intercept any wire, oral, or

electronic communication" violates the Act. 18 U.S.C.

§ 2511(1)(a).  The Act also prohibits a person from

intentionally disclosing to another person or intentionally

using the contents of any wire, oral or electronic

communication knowing or having reason to know that the

information was obtained through the interception of a wire,

oral or electronic communication in violation of the Act. 18

U.S.C. § 2511(1)(c) & (d).

       The Act defines "intercept" to mean "the aural or other

acquisition of the contents of any wire, electronic or oral

communication through the use of any electronic, mechanical, or

other device." 18 U.S.C. § 2510(4).  The Act defines a "wire

communication" as "any aural transfer made in whole or in part

through the use of facilities for the transmission of

communications by the aid of wire, cable, or other like

connection between the point of origin and the point of

reception (including the use of such connection in a switching

station) furnished or operated by any person engaged in

providing or operating such facilities for the transmission of

interstate or foreign communications or communications

affecting interstate or foreign commerce." 18 U.S.C. § 2510(1).

The Act defines an "oral communication" as "any oral

communication uttered by a person exhibiting an expectation

that such communication is not subject to interception under

circumstances justifying such expectation, but such term does

not include any electronic communication." 18 U.S.C. § 2510(2).

The Act provides that "any person whose wire, oral, or

electronic communication is intercepted, disclosed, or

intentionally used in violation of this chapter [18 USCS §§

2510 et seq.] may in a civil action recover from the person or

entity, other than the United States, which engaged in that

violation such relief as may be appropriate."  18 U.S.C.

§ 2520(a).

The defendants contend that the plaintiff has not come

forward with evidence to establish that defendant Krantz

intentionally eavesdropped on or intercepted the telephone

call[2] in question.

_____

2.  A telephone conversation is a wire communication. *Briggs v.*
(continued...)

The plaintiff argues that defendant Krantz had the technology available to eavesdrop on the telephone call and that he deliberately sat in his office and eavesdropped on the call while C.R.W. took the call in Dr. Senft's office. *Doc. 190* at 8 & 9.

There is a genuine dispute about where C.R.W. took the second call. C.R.W. contends that he took the call in Dr. Senft's office. *C.R.W. Aff.* (*Doc. 191-2* at 10). Defendant Krantz contends that C.R.W. took the call in his office. *Krantz Dep.* at 37 (*Doc. 182-16* at 38). That dispute is not material, however, to the plaintiff's Federal Wiretapping Act claim.

There is also a genuine factual dispute about whether defendant Krantz spoke to the plaintiff during the second call. Defendant Krantz testified that, before C.R.W took the call from the plaintiff, he told C.R.W. that he would like to speak to the plaintiff afterwards. *Krantz Dep.* at 23 (*Doc. 182-16* at 24). Defendant Krantz testified that he left his office, went

2.  (...continued)
*Am. Air Filter Co.,* 630 F.2d 414, 417 (5th Cir. 1980).

out in the outer office area and was talking to the secretaries. *Krantz Dep.* at 23 (*Doc. 182-16* at 24). He testified that a few minutes after C.R.W. took the call he briefly stepped into his office to remind C.R.W. that he wanted to talk to the plaintiff, that he then exited the office, that C.R.W. then finished the call and that then he spoke to the plaintiff on the phone. *Krantz Dep.* at 23 & 40 (*Doc. 182-16* at 24 & 41). However, the plaintiff testified that he did not speak to defendant Krantz during the second call, *Walsh Dep.* at 28 (*Doc. 182-2* at 10), and C.R.W. asserts that he did not see or speak to defendant Krantz during the second call, *C.R.W. Aff.* (*Doc. 191-2* at 10). The dispute about whether or not defendant Krantz spoke to the plaintiff during the second call is not a dispute as to a question of fact that is material because, assuming *arguendo* that defendant Krantz did not speak to the plaintiff during the second call, there still is not evidence based upon which a reasonable jury could find that defendant Krantz intercepted the call within the meaning of the Federal Wiretapping Act.

The plaintiff contends that defendant Krantz was removed from his position as the principal of the Middle School as a result of the events underlying this case. The plaintiff views the putative fact that the principal was removed on that basis as circumstantial evidence supporting an inference of illegal interception. The plaintiff has not presented evidence from which a reasonable factfinder could conclude that defendant Krantz was removed from his position rather than resigning his position to take a position at another school district. Whether or not defendant Krantz was removed from his position is not a material factual issue. The chain of inferences that the plaintiff advocates does not hold since it is linked together with speculations. There is not evidence to support an inference of an involuntary termination, such as evidence from someone with personal knowledge. Even if there were evidence that there was an involuntary termination, the fact that it occurred after March 29, 2006 would not reasonably support an inference that the principal acted or did not act in a certain manner on that date.

As to the technology available to intercept a call, the defendants have presented evidence that the telephone system in the Middle School on March 29, 2006 did not have the capability of allowing a person to pick up and listen in on a conversation being conducted on another telephone. *See Keeney Dep.* at 15 (*Doc. 182*-7 at 16). In response, the plaintiff points to the testimony of Dr. Fauth, the Dallastown Area High School principal. Dr. Fauth testified that he could conduct conference calls on his telephone. *Fauth Dep.* at 12 (*Doc. 182-12* at 6). The plaintiff also points to a letter from Peter Zilahy Ingerman, PhD, who states that an Avaya Telephone Set 6416D has conference call capabilities. *Doc. 191-2* at 27. The plaintiff, however, has not pointed to evidence that the phone system used by Dr. Fauth was the same type of phone system used in the Middle School office on March 29, 2006 or that the Middle School office used Avaya Telephone Sets model numbers 6416D on March 29, 2006. The testimony of Dr. Fauth would not reasonably support an inference as to the conference call capacity of the phone used by C.R.W. on March 29, 2006. The plaintiff has not shown for purposes of this motion that he has evidence to support an inference that defendant Krantz had the

technology available to intercept the call in question.

Assuming *arguendo* that such an inference were shown to be

supported by admissible evidence, the circumstantial weight of

the inference would be slight.  The plaintiff has failed to

establish that Dr. Krantz intercepted the call within the

meaning of the Federal Wiretapping Act.[3]

Even assuming *arguendo* that there is a genuine factual

dispute about whether defendant Krantz had the ability to

listen in on the telephone conversation between the plaintiff

and C.R.W. by listening in on another telephone, that dispute

---

[3]. To the extent that the plaintiff is claiming that defendant Krantz merely overheard the telephone conversation because of his location in proximity to where C.R.W. took the call or his purported brief interruption to remind C.R.W. that he wished to speak to the plaintiff, such overhearing is not an interception under the Federal Wiretapping Act because it was not accomplished "through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). *See also United States v. McLeod,* 493 F.2d 1186, 1188 (7th Cir. 1974)(holding that conversation was not intercepted under the Federal Wiretapping Act when agent, who was standing four feet from defendant talking on telephone, overheard the defendant since no device was used).  Additionally, although the plaintiff's main focus is on the second call, *see Doc. 190* at 6, at points in his brief, the plaintiff intimates that the first call was also intercepted. *Id.* at 1.  However, the plaintiff admits that he did not speak to C.R.W. during that first call but rather he spoke to defendant Krantz.  Defendant Krantz's answering the call and speaking to the plaintiff is not an interception under the Federal Wiretapping Act.

is not material because the plaintiff has not presented

evidence from which a reasonable trier of fact could conclude

that defendant Krantz did in fact listen to the conversation by

listening in on another telephone.

The plaintiff asserts that the contents of the emails

from defendant Krantz to him on March 29, 2006 circumstantially

establish that defendant Krantz eavesdropped on the call.

In response to a question about what in the email from

defendant Krantz on March 29, 2006 at 1:06 p.m. leads him to

believe that defendant Krantz eavesdropped on the call, the

plaintiff testified at his deposition:

> Because we discussed it with [C.R.W.].  And it
> says with - the first e-mail dealt with - the
> first call dealt with an assignment from Ms.
> Young in English.  And then the text of this
> message, it deals with an assignment from Mr.
> Hartman.  Okay.  The one from Ms. Young was
> handled previously.  He had no way of knowing
> the content of this conversation unless he had
> eavesdropped on it.

*Walsh Dep.* at 30 (*Doc. 182-2* at 11).  The plaintiff further

testified that C.R.W did not speak to defendant Krantz at all

regarding the assignment from Mr. Hartman. *Walsh Dep.* at 30-31 (*Doc. 182-2* at 11).

The plaintiff's deposition testimony and reasoning, however, is in conflict with a written statement made by C.R.W. on March 31, 2006 about the events on March 29, 2006 in which C.R.W. stated:

> 1. During 29 March 06, early in the day, Dr. Krantz, the principal of the Dallastown Middle School, approached me and informed me my dad had called to remind me to turn in my outline to Mr. Hartman.
>
> 2. Later that same day, my dad called and reminded me that I also had to see Mrs. Young during 9th period to complete my extra credit project for the 3rd Marking Period. I completed both tasks.
>
> 3. Dr. Krantz did not speak to me again that day.

*Doc. 182-5* at 2. The plaintiff's deposition testimony is also in conflict with the March 11, 2009 affidavit of C.R.W. in which C.R.W. states that between classes in the early morning of March 29, 2006, defendant Krantz came up to him and stated that his father had called to remind him to turn in the outline to Mr. Hartman. *C.R.W. Aff.* (*Doc. 191-2* at 10).

In his brief in opposition to the defendants' motion for summary judgment, the plaintiff states that he misspoke at his deposition. He now contends that the first phone call concerned the Hartman assignment and that the second phone call concerned extra credit from Young. He states that he will not submit an affidavit setting forth that sequence of events in order to "steer clear of any allegations of a 'Sham affidavit.'" *Doc. 190* at 12 n.3. The plaintiff, however, points to the statement and affidavit of C.R.W. which sets for that sequence of events. *Id.*

The defendants contend that, although the plaintiff has not submitted an affidavit contradicting his deposition testimony, the sham affidavit doctrine applies, the court should disregard the plaintiff's statement in his brief that he misspoke at his deposition and the court should accept as true the plaintiff's deposition testimony.

Pursuant to the sham affidavit doctrine, "[w]hen, without a satisfactory explanation, a nonmovant's affidavit

contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991). "When a party does not explain the contradiction between the subsequent affidavit and the prior deposition, the alleged factual issue in dispute can be perceived as a "sham," thereby not creating an impediment to a grant of summary judgment based on the deposition." *Baer v. Chase,* 392 F.3d 609, 624 (3d Cir. 2004). "[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit." *Hackman, supra,* 932 F.2d at 241 (quoting *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir. 1988)). However, no all contradictory affidavits are shams. *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007). "Instead, . . . 'when there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit.'" *Id.* (quoting *Baer,* supra*,* 392 F.3d at 625). "Such corroborating evidence may establish that the affiant was 'understandably'

mistaken, confused, or not in possession of all the facts during the previous deposition." *Id.*

Since the plaintiff did not submit an affidavit, the sham affidavit doctrine is not applicable. We will, of course, not consider as evidence the plaintiff's statement in his brief that he misspoke about what was discussed in the first and second calls. We will, however, analyze the other evidence that the plaintiff has presented - the statement and affidavit by C.R.W. - regarding the sequence of events to determine if the plaintiff has presented evidence from which a reasonable trier of fact could conclude that defendant Krantz intercepted the second phone call in violation of the Federal Wiretapping Act.

Contrary to the plaintiff's argument, the email sent by defendant Krantz to the plaintiff on March 29, 2006 at 1:06 p.m. does not provide evidence from which a reasonable factfinder could conclude that defendant Krantz intercepted the second phone call in violation of the Federal Wiretapping Act. The email provides, in pertinent part: "Chris informed me that

you had asked him to give his outline (or finish) to Mr. Hartman and complete some extra credit.  He was pulled from math class to talk with you. . . . I had previously talked with Chris about the Assignment." *Doc. 191-2* at 8.

Given C.R.W.'s affidavit that defendant Krantz had spoken to him in the early morning about the plaintiff's call to remind him to turn in his outline to Mr. Hartman, the references in the email to the outline, to Mr. Hartman and to the assignment do not support an inference that defendant Krantz intercepted the second call since it is clear that defendant Krantz had knowledge of those things by way of the first phone call with the plaintiff.

The reference in the email to "some extra credit" is not sufficient evidence from which a reasonable trier of fact could conclude that defendant Krantz intercepted the second phone call in violation of the Federal Wiretapping Act.  The plaintiff has not presented evidence that supports his contention that defendant Krantz could not have known about

the extra credit unless he intercepted the second phone call.

C.R.W. does not state in his statement or affidavit that he did

not speak to defendant Krantz about extra credit during the

conversation with Krantz in the early morning of March 29,

2006, and the plaintiff has not pointed to evidence that would

lead to a reasonable inference that defendant Krantz could not

have learned of the extra credit in some manner other than by

intercepting the second call.

The plaintiff also appears to be contending that the

email from defendant Krantz to him at 2:11 p.m. on March 29,

2006 also supports an inference that defendant Krantz

intercepted the second call.  However, there is nothing in that

email which in any way could be viewed as supporting such an

inference.

The plaintiff argues in his brief that defendant Krantz

disclosed the contents of the second call by placing the

contents in an unsecure email sent to the plaintiff.  However,

disclosing the contents of a communication is only a violation

of the Federal Wiretapping Act if the person disclosing the

contents knows or has reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Act. 18 U.S.C. § 2511(1)(c). Given that the plaintiff has not presented evidence from which a reasonable trier of fact could conclude that defendant Krantz intercepted the second phone call in violation of the Federal Wiretapping Act, the plaintiff's disclosure claim under the Federal Wiretapping Act necessarily fails.

Based on the foregoing, we recommend that defendants Krantz and the Dallastown Area School District be granted summary judgment as to the plaintiff's Federal Wiretapping Act claims.

C. Pennsylvania Wiretap Act.

Defendant Krantz contends that he is entitled to immunity from the Pennsylvania Wiretap Act claim under the Pennsylvania Political Subdivision Tort Claims Act or, in the alternative, that the plaintiff has failed to establish a violation of the Pennsylvania Wiretap Act.

26

The provisions of Pennsylvania's Wiretap Act applicable to this case are substantially the same as the provisions of the Federal Wiretapping Act applicable to this case. The Pennsylvania Wiretap Act is interpreted in the same way as the federal Act. *See Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 113 n.6 (3d Cir. 2003)(noting that the Pennsylvania statute is interpreted the same way as the federal statute). For the reasons stated above in connection with the Federal Wiretapping Act claim, the plaintiff has not presented evidence from which a reasonable trier of fact could conclude that defendant Krantz intercepted the second phone call in violation of the Pennsylvania Wiretapping Act. Accordingly, defendant Krantz is entitled to summary judgment as to the claims under the Pennsylvania Wiretapping Act.

Given that we have concluded that the defendant Krantz is entitled to summary judgment on the merits of the plaintiff's Pennsylvania Wiretapping Act claims, we need not address defendant Krantz's contention that he is entitled to immunity. We note, however, that since as Judge Conner

indicated in the Memorandum and Order of August 22, 2008 the Pennsylvania Wiretap Act requires intentional conduct, there is not a basis here for immunity.  Local agency employees are not entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act for willful misconduct.  Willful misconduct under the Pennsylvania Political Subdivision Tort Claims Act is synonymous with intentional tort.  Accordingly, analysis in this case on the question of immunity merges with the analysis of the merits of the Pennsylvania Wiretap Act claim.

We also note that the plaintiff's contention that defendant Krantz' argument that he is entitled to immunity is tantamount to an admission of liability is frivolous.  The case cited by the plaintiff as support for that contention - *Thomas v. Nakatani*, 309 F.3d 1203 (9th Cir. 2002) - provides no support for that contention.

D.  Fourth Amendment.


Defendants Krantz and the Dallastown Area School District contend that the plaintiff has failed to establish a violation of the Fourth Amendment.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  The Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches by public school officials. *New Jersey v. T.L.O.,* 469 U.S. 325, 333 (1985).  "[A]pplication of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740 (1979)(citing *inter alia Rakas v. Illinois,* 439 U.S. 128 (1978)).   This inquiry normally embraces two discrete questions: first, whether the individual

by his conduct has exhibited a subjective expectation of privacy; and second, whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Id.*

In the instant case the plaintiff has not provided evidence that either he or C.R.W. had a subjective expectation of privacy in the second telephone call. The call was made through a telephone line to the Middle School and there is no evidence that either the plaintiff or C.R.W. asked for privacy.

Moreover, even assuming *arguendo* that the plaintiff or C.R.W. had a subjective expectation of privacy, we conclude that that subjective expectation was not reasonable. The call was through a telephone line to the Middle School, the call was taken by C.R.W. in a school administrator's office and there is no evidence that either the plaintiff or C.R.W. asked for privacy. Additionally, as discussed above, the plaintiff has failed to present evidence to support his contention that defendant Krantz listened in on the telephone call by picking up another line or otherwise using any sense-enhancing device.

The plaintiff's Fourth Amendment claims must, therefore,

necessarily be based on defendant Krantz merely overhearing the

telephone conversation.  In the school setting, it is not

reasonable for a parent or a student to expect that their

telephone conversations will not be overheard by a school

administrator who is in the general vicinity at the time the

conversation is conducted.


        The defendants are entitled to summary judgment on the

plaintiff's Fourth Amendment claims.[4]


IV.  Plaintiff's Motion for Summary Judgment.


        As discussed above, the plaintiff has failed to

establish that there is a genuine material question of fact in

dispute.   It therefore necessarily follows that the plaintiff

---

4. Absent a violation of an underlying constitutional right,
there can be no municipal liability.  *City of Los Angeles v.
Heller,* 475 U.S. 796, 799 (1986).  Therefore, because we conclude
that neither the plaintiff nor C.R.W. had a reasonable expectation
of privacy in not having their conversation overheard and,
therefore, there was no search for purposes of the Fourth
Amendment, we need not address the plaintiff's claim that the
School District had a policy or custom of allowing unlawful
searches.

has failed to establish that he is entitled to judgment as a matter of law.[5]  Accordingly, we will recommend that the plaintiff's motion for summary judgment be denied.

V.  Defendant Unknown Dallastown Staff Member.

Defendant unknown Dallastown staff member has not been identified or served.[6]  We recommend that the court *sua sponte* grant summary judgment in favor of defendant unknown Dallastown staff member.

Under the right circumstances, a district court may enter summary judgment *sua sponte. Couden v. Duffy,* 446 F.3d 483, 500 (3d Cir. 2006).  Generally, the court may not *sua sponte* enter summary judgment against a party without placing the party on notice that the court is considering such and

---

5. We note that the plaintiff, citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), contends that the defendants have failed to provide evidence to support their defenses.  However, since the plaintiff has the burden of proof with regard to his claims, it is the plaintiff's burden to establish that he is entitled to judgment as a matter of law as to his claims, and there is no occasion to reach issues of evidentiary support for defenses.

6. *See, supra,* Note 1.

without providing the party an opportunity to present relevant evidence. *Id.* However, "[n]otice is satisfied if 'the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward.'" *Id.* (quoting *Gibson v. Mayor and Council of Wilmington,* 355 F.3d 215, 223-24 (3d Cir. 2004).

Given that the plaintiff's claims against defendant unknown Dallastown staff member are that he or she assisted defendant Krantz in eavesdropping on one of his telephone calls to C.R.W, that defendant Krantz moved for summary judgment on the eavesdropping claims and that the plaintiff himself moved for summary judgment on all claims, we conclude that the plaintiff had reason to believe that the court might reach the question of whether or not to grant summary judgment to defendant unknown Dallastown staff member and the plaintiff had an opportunity to marshal his evidence in support of his claims against defendant unknown Dallastown staff member.

For the reasons stated in connection with the motion for summary judgment filed by defendants Krantz and the

Dallastown Area School District, we will recommend that summary judgment be granted in favor of defendant unknown Dallastown staff member.

VI.  Recommendations.

Based on the foregoing, it is recommended that the motion (doc. 182) for summary judgment filed by defendant Krantz and the Dallastown Area School District be granted, that the plaintiff's motion (doc. 184) for summary judgment be denied, that summary judgment be entered *sua sponte* in favor of defendant unknown Dallastown staff member and that the case be closed.

/s/ J. Andrew Smyser
J. Andrew Smyser
Magistrate Judge

Dated:  May 6, 2009.